EL PUEBLO DE PUERTO RICO, ETC., demandante y apelado, *v.* 632 METROS CUADRADOS DE TERRENO, ETC., COMPAÑÍA DE LOS FERROCARRILES DE PUERTO RICO Y SUCESIONES DE DON AVELINO VICENTE y GONZÁLEZ, DE DOÑA ANA SEGUNDA AGUAYO y JOHN DOE y RICHARD ROE, demandados y apelante la codemandada SUCESIÓN VICENTE.

Número 10676.

*Sometido:* 7 de abril de 1953. *Resuelto:* 19 de mayo de 1953.

962

*Eduardo Urrutia Martorell*, abogado de la apelante; *Luis E. Dubón, R. García Cintrón, F. Fornaris, Jr., Jaime Pieras, Jr.* y *Luis Ríos Algarín*, abogados de la codemandada, Compañía de los Ferrocarriles de Puerto Rico.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

En 30 de diciembre de 1948 el Pueblo de Puerto Rico radicó ante el anterior Tribunal de Expropiaciones una demanda con el propósito de expropiar cierta parcela de terreno de 632 metros cuadrados. El Pueblo acompañó a su demanda una declaración de adquisición que invistió al gobierno con título de propiedad sobre dicha parcela y depositó con el secretario del tribunal la suma de $8,848 como su estimado del valor justo y razonable de la parcela. La demanda dice que la Compañía de los Ferrocarriles de Puerto Rico y los miembros de las Sucesiones de Avelino Vicente González y Ana Segunda Aguayo Hernández fueron incluídos como demandados por el motivo de que, según información y creencia del demandante, la Compañía era la dueña y los miembros de las Sucesiones eran las personas que, como dueños de algún interés en la parcela, podrían reclamar compensación por la misma.

El *exhibit* I, que se acompañó y se hizo formar parte de la demanda, describe primeramente la parcela expropiada de 632 metros cuadrados. También informa que la referida parcela de 632 metros cuadrados es segregación de una parcela mayor, de 1,125 metros cuadrados, paralela a la vía férrea. Esta última parcela, según el exhibit I, "la adquirió

la Compañía de los Ferrocarriles de Puerto Rico, según escritura de Cesión de Terrenos y Concesión, núm. 594, otorgada por Don Avelino Vicente y González, ante el notario don Mauricio Guerra Mondragón y Mejías, el día 31 de agosto de 1897, y no ha sido inscrita en el Registro de la Propiedad". Sigue diciendo el exhibit I que la parcela de 1,125 metros cuadrados había sido a su vez segregada de otra de 89 cuerdas conocida como la finca núm. 1618, inscrita al folio 87 del tomo 39 de la de la Capital, inscripción primera, de 21 de mayo de 1897, a favor de Avelino Vicente González, casado con Ana Segunda Aguayo Hernández. Luego el exhibit I describe la finca de 89 cuerdas de la cual se segregó la parcela de 1,125 metros cuadrados.

Los demandados fueron debidamente emplazados, pero los miembros de las Sucesiones no radicaron comparecencias o contestaciones y su rebeldía fué anotada.([1]) El 7 de marzo de 1949 el Pueblo y la Compañía radicaron una estipulación al efecto de que "en la referida demanda se hizo parte demandada a los miembros de las Sucesiones de don Avelino Vicente González y doña Ana Segunda Aguayo Hernández por aparecer inscrita a su nombre en el Registro de la Propiedad la finca principal de la cual se habría de segregar la parcela objeto de la expropiación aun cuando es lo cierto que la parcela había sido adquirida por y pertenece a la Compañía de los Ferrocarriles de Puerto Rico en su totalidad y en pleno dominio." Seguía diciendo la estipulación que el demandante y la Compañía habían convenido que el valor justo y razonable de la parcela expropiada era de $11,376 y que consentían en que se dictara sentencia sobre esa base; que la Compañía renunciaba a los intereses sobre el exceso concedido con relación a la cantidad originalmente depositada, $2,528; y que las partes renunciaban el derecho de apelación.

---

([1]) De los autos ante nos no surge la anotación de las rebeldías. Sin embargo, la sentencia del tribunal inferior dice que se anotaron las rebeldías y la apelante no impugna aquí dicha afirmación.

Al día siguiente, 8 de marzo de 1949, el anterior Tribunal de Expropiaciones dictó sentencia a tenor con la estipulación. El 15 de marzo de 1949 la Compañía radicó una moción solicitando se le entregaran los $11,376. Al día siguiente el tribunal dictó una orden a tal efecto. Los miembros de las Sucesiones nunca fueron notificados de (1) la estipulación entre El Pueblo y la Compañía, (2) la orden de la corte aprobando la estipulación, (3) la moción de la Compañía sobre entrega de los $11,376, o (4) la resolución ordenando la entrega del dinero a la Compañía.([2])

El 3 de abril de 1950—un año 26 días después de dictada la sentencia por el anterior Tribunal de Expropiaciones—los miembros de la Sucesión de Avelino Vicente presentaron moción en el procedimiento de expropiación solicitando que se ·dejara sin efecto la sentencia del 8 de marzo de 1949. Alegaban que la Sucesión era la única dueña de la parcela expropiadá y que la Compañía no tenía derecho, título o interés alguno en la misma. Según la Sucesión, de conformidad con una escritura del .31 de agosto de 1897, Avelino Vicente le cedió a la Compañía 1,305 metros cuadrados para que los usara como apeadero, con una disposición de que la referida parcela revertiría a Vicente en caso de que la Compañía dejara de usarla como apeadero; que "desde mucho antes de iniciarse estos procedimientos de expropiaciones, la Compañía de Ferrocarriles de Puerto Rico abandonó el uso y servicio de dicho apeadero, eliminando de su itinerario toda clase de parada en/ dicho sitio"; y que, por consiguiente, el título a dicha parcela había revertido a la Sucesión de Avelino Vicente.

---

([2]) Aparece una nota al calce de la sentencia aprobando la estipulación, hecha por el Secretario del Tribunal de Expropiaciones, que dice "Notificadas las partes con copia hoy día 9 de marzo de 1949". Pero interpretamos la misma como que quiere decir que solamente el Pueblo y la Compañía fueron notificados de la sentencia, ya que el testimonio no controvertido en la vista de la moción para dejar sin efecto la sentencia fué al efecto de que los miembros de las Sucesiones nunca fueron notificados de ningún documento con excepción de la demanda.

Seguía alegando la moción de là Sucesión que la Compañía, a sabiendas de que carecía de derecho, título o interés sobre la referida parcela, ya sea por "inadvertencia, error o malicia", compareció ante el tribunal alegando que tenía tal derecho y que por medio de la estipulación antes mencionada "confundió" al anterior Tribunal de Expropiaciones y obtuvo una orden para que se le entregaran los $11,376, que pertenecían exclusivamente a la Sucesión.

La Sucesión alegó que no tenía interés en que se modificara la suma concedida por la parcela y que comparecía solamente en solicitud de que se reabriera el procedimiento para que se dictara nueva sentencia que fijara la misma cantidad como el valor de la parcela y se le ordenara a la Compañía que devolviera los $11,376 al anterior Tribunal de Expropiaciones para que éste determinara en su día quién tenía derecho a recibir tal pago. Alega la moción que se acompañaban los siguientes documentos: (1) copia de la escritura número 594 del 31 de agosto de 1897, otorgada por Avelino Vicente a favor de la Compañía; (2) certificación del Registrador de la Propiedad en cuanto a la primera inscripción de la finca núm. 2153 acreditativa de la titulación a favor de Avelino Vicente, así como también de la "cesión condicional" contenida en dicha escritura en cuanto al apeadero; (3) certificación de la nota marginal hecha por el Registrador al margen de la referida inscripción primera, fechada 28 de noviembre de 1947, "acreditativa de la cancelación de la cesión hecha a la Compañía de Ferrocarriles de Puerto Rico, para el apeadero en cuestión." (³)

En su moción para que se deje sin efecto la sentencia del anterior Tribunal de Expropiaciones, los miembros de la Sucesión Vicente invocaron las Reglas 55(c) y 60(b) de las

---

(³) Estos documentos no aparecen adheridos a la moción que aparece de los autos ante nos; pero fueron presentados en evidencia durante la vista sobre la moción para dejar sin efecto la sentencia, y aparecen de la transcripción de evidencia.

de Enjuiciamiento Civil. Alegaron que todos ellos descansaron en Manuel Vicente Aguayo, uno de los miembros de la Sucesión, para que se ocupara del asunto; que cuando don Manuel fué notificado de la demanda éste se hallaba enfermo, en cama, bajo atención facultativa, durando su convalecencia más de 2 meses; que bajo tales circunstancias don Manuel no sabía a qué terrenos se refería la expropiación; lo que dió motivo a que se dictara sentencia en rebeldía contra los miembros de la Sucesión.

El 27 de abril de 1950 el anterior Tribunal de Expropiaciones celebró una vista sobre la moción de la Sucesión para dejar sin efecto su sentencia del 8 de marzo de 1949. El mismo día la Compañía presentó una moción para que se desestimara la de la Sucesión por haberse radicado después de transcurridos 6 meses desde la fecha en que se dictó sentencia. En apoyo de su moción, la Compañía citó la Regla 60(b) y los casos de *Great Am. Insurance Co.* v. *Corte*, 67 D.P.R. 564 y *Alcázar* v. *Corte*, 67 D.P.R. 727. Los abogados del Pueblo y los de la Compañía comparecieron a la vista que se celebró el 27 de abril, pero el abogado de la Sucesión no compareció. El 28 de abril de 1950 el anterior Tribunal de Expropiaciones declaró sin lugar la moción de la Sucesión para que se dejara sin efecto la sentencia por el fundamento de que la misma fué radicada fuera de término. Resolvió el tribunal que de conformidad con la Regla 60(b) tal moción debió haberse radicado dentro de los 6 meses siguientes a la fecha de la sentencia.

Posteriormente el anterior Tribunal de Expropiaciones declaró con lugar la moción de la Sucesión para que se dejara sin efecto la resolución del 28 de abril de 1950, toda vez que la Sucesión nunca fué notificada de la vista de su moción para que se dejara sin efecto la sentencia. La Sucesión radicó una moción enmendada para que se dejara sin efecto la sentencia alegando fraude de parte del Pueblo y de la Compañía, celebrándose una vista sobre la misma en la cual se adujo

testimonio oral y documental. Una vez más el tribunal sentenciador dictó resolución declarando sin lugar la moción para que se dejara sin efecto la sentencia. Nuevamente descansó el tribunal en la Regla 60(*b*) y en los casos de *Great Am. Insurance Co.* v. *Corte*, supra y *Alcázar* v. *Corte*, supra. Manifestó la corte que no se había demostrado que la "sentencia . . . sea nula de su propia faz". El caso se encuentra ante nos en apelación interpuesta por la Sucesión contra la resolución declarando sin lugar su moción para dejar sin efecto la sentencia.

■ De ser éste un pleito civil ordinario, no vacilaríamos en confirmar la resolución del tribunal sentenciador. La prueba demuestra que por su propia inadvertencia y negligencia los miembros de la Sucesión no radicaron una comparecencia o una contestación y que como resultado de ello se les anotó rebeldía en su contra. Posteriormente el Pueblo firmó una estipulación con la Compañía y se dictó sentencia a base de la misma.(⁴) No nos detendremos a examinar la cuestión de si bajo estos hechos, procedería una moción para dejar sin efecto la sentencia bajo la Regla 60(*b*). Tal moción debe radicarse dentro del término de seis meses desde la fecha de la sentencia. En este caso la moción no fué radicada hasta transcurridos trece meses desde que se dictó sentencia. Por

---

(⁴) El abogado del Pueblo actuó concienzudamente en todo este asunto. Como se indica más adelante, el gobierno no tiene interés en la distribución de la compensación, siempre y cuando haga un esfuerzo razonable para incluir como demandados a todos aquéllos que pudieran tener un interés en la propiedad. No obstante, el abogado del gobierno, aun cuando no venía obligado a hacerlo, se acercó a una abogada, hija de uno de los miembros de la Sucesión, y ésta le manifestó, después de consultar con su padre, que la Sucesión no tenía interés en el caso y no pensaba comparecer. De conformidad, se anotó la rebeldía de la Sucesión y el gobierno firmó la estipulación otorgándole toda la compensación a la Compañía. Como veremos, la Sucesión sale victoriosa aquí sobre una teoría que nada tiene que ver con la Regla 60(*b*). Pero aquí no hay el más leve indicio de prueba para sostener su imputación de fraude de parte del gobierno y de la Compañía. No es propio que el abogado de la Sucesión haga tal imputación sin prueba alguna para sostenerla. Véase *Cordero* v. *Rivera*, ante pág. 586.

consiguiente la misma fué radicada muy tarde para poder conseguir un remedio a tenor con la Regla 60 (*b*). Como consecuencia, no intervendríamos con la decisión del tribunal sentenciador si este caso fuera gobernado por la Regla 60 (*b*) y fuera un pleito ordinario. *Great Am. Insurance Co.* v. *Corte*, supra; *Alcázar* v. *Corte*, supra.

Sin embargo, no podemos resolver este caso en forma tan fácil precisamente porque un procedimiento de expropiación no es un caso ordinario. Por el contrario, existe un número de diferencias notables entre el recurso de expropiación y un caso ordinario. El derecho del gobierno a expropiar propiedad privada para uso público "es un atributo inherente y necesario de la soberanía . . . y es superior a todos los derechos de propiedad." *Autoridad de Hogares* v. *Corte*, 68 D.P.R. 54, 60; *McCormick* v. *Marrero, Juez*, 64 D.P.R. 260; *Porto Rico Tel. Co.* v. *Puerto Rico Commun. Authority*, 189 F.2d 39 (C.A. 1, 1951); *People of Puerto Rico* v. *Eastern Sugar Associates*, 156 F.2d 316 (C.A. 1, 1946). Un recurso de expropiación es un procedimiento *in rem*. No va dirigido contra ningún demandado en particular, sino contra la propiedad propiamente dicha.([5]) Si bien el ejercicio del poder de expropiar extingue todos los derechos anteriores sobre la propiedad, el gobierno no expropia el interés que pueda tener ningún demandado en particular sobre la propiedad. El título que se adquiere mediante la expropiación no se deriva del título del anterior dueño, sino que es un título nuevo, independiente y absoluto. *Servicio de Acueductos* v. *Registrador*, 70 D.P.R. 232; *Duckett & Co.* v. *United States*, 266 U.S.

---

([5]) Es por este motivo que se hace la afirmación de que no se puede desestimar un recurso de expropiación por defecto de partes demandadas. *Manual on Federal Eminent Domain*, págs. 364 *et seq.*; 4 Stan. L. Rev. 266, 269.

El *Manual on Federal Eminent Domain*, que es un estudio valioso y detallado de todas las fases de la expropiación, fué publicado en 1940 por el Departamento de Justicia Federal. Si bien no está disponible para el público en general, hemos podido examinarlo por cortesía del Fiscal Federal para Puerto Rico.

149, 151. El gobierno es investido del título tan pronto como se radica la declaración de adquisición y se consigna en corte el importe estimado de la compensación; bajo las circunstancias, el gobierno adquiere su título en virtud de una declaración de adquisición, no mediante la resolución de la corte basada en la declaración de adquisición. *Pueblo* v. *Registrador*, 70 D.P.R. 260, 263; *Autoridad de Hogares* v. *Corte*, supra, págs. 65–66; *Porto Rico Tel. Co.* v. *Puerto Rico Commun. Authority*, supra. Siempre y cuando que el gobierno haga un esfuerzo razonable para incluir como demandados a todas las personas que pudieran tener un interés en los bienes expropiados, el gobierno no tiene interés como tal en la distribución de la compensación pagada a los varios reclamantes.[6] La intervención del gobierno se limita a dos cuestiones: (1) obtener título sobre la propiedad a nombre del gobierno; (2) determinar el importe total de la cantidad que debe consignar en corte por la propiedad.[7] *United States* v. *Adamant Co.*, 197 F.2d 1, 4–5 (C.A. 9, 1952); Clark, *The Proposed Condemnation Rule*, 10 Ohio State L.J. 1, 2–3.[8] Una "sentencia" basada en una declaración de adquisición que dice que se inviste título al gobierno, no es apelable; el

---

[6] El dejar de incluir como demandada a una persona que aparece tener un interés en la propiedad, podría traer graves consecuencias para el gobierno. "El dejar de hacerle a una persona mencionada como parte, la notificación exigida por la Constitución y por el estatuto, no afecta la jurisdicción de la corte para transferirle el título a los Estados Unidos, pero significa que la corte no ha adquirido jurisdicción sobre la persona no notificada, y en consecuencia ésta no está obligada por la determinación de la compensación y puede luego relitigar la misma." *Manual on Federal Eminent Domain*, pág. 466.

[7] Como dijimos en *Pueblo* v. *Franceschi*, 72 D.P.R. 554, 560, escolio 3, "en muchos casos, aun cuando las partes han convenido el precio, se radica un procedimiento amigable de expropiación, con el fin de darle al Pueblo posesión inmediata y un título limpio." Véanse *Danforth* v. *United States*, 308 U.S. 271; *Manual on Federal Eminent Domain*, págs. 286–88.

[8] Es muy interesante encontrar al Juez Clark—quien está familiarizado con la situación en Puerto Rico, v.g., Clark, *The New Judiciary Act of Puerto Rico: A Definitive Court Reorganization*, 61 Yale L.J.

derecho de apelación existe en un caso de expropiación solamente cuando se dicta sentencia final resolviendo el caso totalmente, incluyendo la adjudicación de la cantidad a pagarse como compensación y las personas con derecho a ella. *Autoridad de Hogares* v. *Corte,* supra, 66; *Catlin* v. *United States,* 324 U.S. 229.

Las cortes estaduales en los Estados Unidos continentales han reconocido la naturaleza singular del procedimiento de expropiación. Las diferencias que hemos apuntado entre éste y los casos ordinarios han constituído o bien el fundamento expreso o por lo menos la principal premisa implícita para las decisiones de la mayoría de las cortes, con las cuales convenimos, al efecto de que si bien se requiere una contestación o cualquier otra alegación adecuada para cuestionar la validez de la adquisición, no se requiere una contestación—en verdad, en algunos estados ni siquiera se permite— sobre la cuestión de la compensación a demandados específicos. Y si no se exige contestación en cuanto a la compensación, de ahí surge que no puede haber rebeldía contra un demandado sobre dicha cuestión. *Caruthersville School Dist. No. 18* v. *Latshaw,* 233 S.W.2d 6, 11, 12 (Mo., 1950); *Board of Education* v. *City of Chicago,* 83 N.E.2d 714, 718–719

1148—utilizando la experiencia adquirida en los casos federales de expropiación en Puerto Rico para ilustrar la necesidad de una regla especial de procedimiento para tales casos en las cortes Federales. Véanse los escolios 11 y 12. El hecho de que el Juez Clark cite lo que el Juez Holmes solía llamar la *"prime authority"* no desmerece su valor. En Clark, *The Proposed Condemnation Rule,* 10 Ohio State L.J. 1, 4, escolio 10, se dice lo siguiente:

"Los problemas prácticos con que se confrontan los abogados del gobierno aparecen vivamente expuestos en el siguiente extracto del Informe del Fiscal Federal Sr. Snyder—ahora Juez Asociado del Tribunal Supremo de Puerto Rico—al Procurador General Biddle, el 15 de enero de 1942: 'El impacto de la emergencia de la defensa se ha hecho sentir con mayor fuerza en nuestro trabajo de expropiación. Los Estados Unidos nunca habían radicado un caso de expropiación en Puerto Rico antes de 1939. Seis días después de haber Alemania invadido a Polonia en septiembre, 1939, radicamos nuestro primer caso contra 1,877 acres de terreno en nuestra costa noroeste, donde actualmente radica la famosa

(Ill., 1949) ; *Lamasco Realty Co.* v. *City of Milwaukee*, 8 N.W.2d 372, 387–88 (Wis., 1943) ; *United States* v. *Nudelman*, 104 F.2d 549, 551 (C.A. 7, 1939) ; *Department of Public Works and Buildings* v. *Lewis*, 176 N.E. 345 (Ill., 1931) ; *Missouri Power & Light Co.* v. *Creed,* 32 S.W.2d 783 (Mo., 1930) ; *In re Rogers*, 220 N.W. 808 (Mich., 1928) ; *Burgess* v. *Bremer County*, 178 N.W. 389 (Iowa, 1920) ; *State* v. *Superior Court*, 182 Pac. 962 (Wash., 1919). Véanse *United States* v. *Certain Parcels of Land, Etc.*, 345 U.S. 344; Nota, 9 *American and English Cases Annotated* 476.

La regla que precede aparece en 2 Nichols, *Eminent Domain*, 2da. edición, págs. 1080–1081, como sigue:

"Parece ser la regla en la mayoría de las jurisdicciones en que se lleva a cabo la expropiación mediante procedimientos judiciales, que después que el dueño del terreno que se interesa expropiar ha sido incluído como parte demandada y debidamente emplazado, éste no está obligado y ni siquiera se le permite radicar una contestación o cualquier otra alegación, para poder tener derecho a ser oído, por lo menos sobre la cuestión de los daños. . . .

"En algunas jurisdicciones, si bien el dueño no rinde su derecho a ser oído sobre la cuestión de daños al dejar de radicar una contestación, se cree que constituye la mejor práctica, de no ser absolutamente necesaria, que el demandado interponga mediante su contestación cualesquiera objeciones que

Base Aérea Borinquen, que ya se ha ganado el nombre de guardián del Caribe. Veinticuatro horas después de haber recibido esta primera solicitud de expropiación, habíamos obtenido título y puesto al Ejército en posesión física de este terreno. Pero hacerle frente a las reclamaciones que esto trajo como resultado, era un problema enteramente diferente. El procedimiento local es complicado; surgieron cientos de problemas de hecho y de derecho; y el caso ha requerido meses de trabajo de varios abogados. . . . Esta propiedad constaba de 276 parcelas, con 344 demandados que tenían un interés en la misma. Estaban envueltos en el procedimiento terrenos urbanos y de cañas de azúcar, de palmas, de cocoteros, de frutas. En verdad, un caso suplementario incluía todo un barrio. Escuelas, iglesias, carreteras, experimentos agrícolas, zanjas de riego, y líneas eléctricas estaban todos envueltos en este caso,' e igualmente en los 49 casos adicionales, que trataban de más de 15,000 acres de terreno en la isla, radicados a la fecha del informe."

pudiera tener sobre la validez de la pretendida adquisición que no aparezcan de la faz de la petición."

Encontramos la misma doctrina expuesta en el *Manual on Federal Eminent Domain*, a la página 527, como sigue: "Los estados que exigen una contestación, en términos generales, lo hacen para asegurar que ciertas cuestiones, v.g., el derecho a expropiar, sean dilucidadas, de serlo, al principio; y una 'rebeldía', en términos generales, no significa nada más que el demandado, no habiendo levantado ciertas cuestiones en el momento oportuno, está impedido de levantarlas posteriormente. Con ello no está impedido de participar en la distribución de la compensación."

Sobre la cuestión específica. de si una sentencia en rebeldía puede ser obtenida en un caso de expropiación, en el caso de *Concord Improvement Co.* v. *Reichelderfer*, 65 F.2d 189, 190 (C.A., D.C., 1933), la corte resolvió que con respecto a la cuestión de compensación "no existe tal cosa como una sentencia en rebeldía . . . ". Dijo la corte que "la práctica usual no requiere alegación o contestación alguna de parte del demandado . . . ". Manifestó que la "razón por la cual no hay ninguna necesidad de que el dueño comparezca y conteste, es que el terreno puede ser expropiado solamente mediante el pago de la justa compensación al dueño, y ésta, desde luego, debe ser determinada y pagada independientemente de si el dueño comparece y contesta." Toda vez que un demandado cuyo interés en una propiedad expropiada surja de las alegaciones no está en rebeldía con respecto a la cuestión de compensación porque deje de comparecer o contestar, a moción de éste, se han dejado sin efecto adjudicaciones de compensación hechas a otras personas sin notificación a tal demandado, independientemente de la limitación de seis meses contenida en la Regla 60 (*b*). *United States* v. *247 Acres of Land, Etc.*, 104 F.Supp. 938 (Dist. Ct., Pa. 1952); *United States* v. *Certain Lands, Etc.*, 82 F.Supp. 432 (Dist. Ct., N.Y., 1946). Véanse *Pacific Nat. Bank of Seattle* v.

*Bremerton Bridge Co.*, 97 P.2d 162 (Wash., 1939) ; *Manual on Federal Eminent Domain* 937.

Nuestro criterio de que un demandado en un caso de expropiación no está en rebeldía sobre la cuestión de compensación porque deje de comparecer o contestar la demanda, encuentra apoyo en las disposiciones de la Regla 55(a) de las de Enjuiciamiento Civil. Bajo dicha regla se anota una rebeldía cuando el demandado no radica una contestación si es parte "contra la cual se solicite un remedio afirmativo por sentencia".[9] Pero el gobierno no solicita *remedio afirmativo* contra un dueño anterior sobre la cuestión de quién tiene derecho a la compensación por la propiedad expropiada. Por el contrario, como hemos visto, el gobierno no tiene interés en la distribución de la compensación. Por consiguiente surge claro que el gobierno no tenía derecho a la anotación de una rebeldía contra la Sucesión sobre la cuestión de si ésta tenía derecho a alguna compensación. Véase *Default Judgments in Excess of Prayer*, 4 Stan.L.Rev. 278.[10]

No hemos pasado por alto el hecho de que cuando A y B son ambos posibles reclamantes del dinero consignado, A

---

[9] La Regla 55*(a)* dice así: "Cuando una parte contra la cual se solicite un remedio afirmativo por sentencia haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas Reglas, y este hecho se pruebe mediante declaración jurada o de otro modo, el secretario anotará su rebeldía."

[10] El hecho de que el gobierno no juegue papel alguno en la cuestión de quién debe recibir la compensación ha quedado demostrado por lo que ocurrió en este caso. La Sucesión no cuestiona la validez de la adquisición. Y no hace esfuerzo alguno para obtener dinero del gobierno o para aumentar la cantidad consignada según la estipulación del Pueblo y de la Compañía. La Sucesión solamente pide (1) que la Compañía sea ordenada devolver al Secretario del tribunal los $11,376 pagádosle a ella; y (2) que, luego de una vista en los méritos, dichos $11,376 le sean entregados a la Sucesión. El Pueblo no ha radicado alegato ni comparecido en forma alguna en esta apelación.

Si la Compañía fuera insolvente y la Sucesión estuviere tratando de obtener un nuevo depósito de $11,376 del gobierno o si estuviera insistiendo en que tenía derecho a una suma mayor de $11,376, posiblemente tendríamos una cuestión diferente. Véase el escolio 15. Pero dicho problema no surge bajo los hechos de este caso.

podría tratar de obtener una rebeldía contra B como su co-demandado (convertido, como veremos, en codemandante sobre la cuestión de compensación) bajo la teoría de que, en cuanto a ellos, A tenía derecho a toda la cantidad. Suponemos, sin decidirlo, que tal solicitud podría hacerse cuando se acompañe con la debida notificación a B. Pero aquí nada hay en autos que demuestre tal solicitud específica de la Compañía en contra de la Sucesión. Por el contrario, hubo aparentemente una anotación rutinaria de rebeldía hecha por el secretario de la corte, predicada en haber dejado la Sucesión de contestar la demanda del *Pueblo*. Véase escolio 1. Bajo estas circunstancias, la Compañía no puede ahora reclamar los beneficios de una supuesta rebeldía en relación con la controversia existente entre ella y la Sucesión como reclamantes del dinero consignado en corte.

█ En un caso civil ordinario la regla en esta jurisdicción es que un demandado contra quien se ha anotado la rebeldía no puede presentar evidencia suya en una vista en que se presenta evidencia del demandante. *Rivera* v. *Goytía*, 70 D.P.R. 30. En los casos de expropiación no existe regla similar. Es decir, como hemos visto, un demandado en un procedimiento de expropiación, que no ha comparecido o contestado la demanda, no está por ello impedido de presentar testimonio en la vista sobre la cuestión de compensación. Esta es otra faceta de la proposición de que la regla corriente en cuanto a rebeldía no es aplicable en los casos de expropiación con respecto a la cuestión de qué personas tienen derecho a recibir compensación por la propiedad expropiada y cuánto deben recibir.

██ Nos damos cuenta de que cuando la cuestión en controversia en un caso de expropiación es el importe de la compensación, los casos resuelven que (1) el demandado es en efecto el demandante; (2) éste debe presentar su evidencia en primer lugar; y (3) tiene el peso de la prueba en cuanto a valoración. *Pueblo* v. *García*, 66 D.P.R. 504;

*United States ex rel. T.V.A.* v. *Powelson*, 319 U.S. 266, 273–74; Dolan, *Court Practice in Condemnation Suits*, 31 Va.L.Rev. 9, 17. Pero estos casos no menoscaban la conclusión de que un demandado no está en rebeldía, en tanto en cuanto concierne a la compensación, porque deje de contestar la demanda. En su consecuencia, a pesar de la ausencia de una contestación, un demandado tiene derecho a que se le notifique la vista o la acción que se intenta tomar, en relación con la suerte de los fondos consignados. Si no comparece, después de notificado, quizás las partes han cumplido con su obligación para con él. Por otro lado, si comparece, él simplemente sería el "demandante" y vendría obligado a presentar su evidencia en primer lugar y sufrir el peso de la prueba en cuanto a la valoración. Cf. *Canino* v. *Tribl. de Expropiaciones*, 70 D.P.R. 152, que resuelve que aun cuando un dueño anterior fué así convertido en demandante, el gobierno no tenía derecho a una alegación más específica después que el dueño anterior había alegado en forma general en su contestación que el valor de los bienes era mayor que la suma consignada.

El procedimiento Federal parece estar sustancialmente de acuerdo con nuestro criterio. Antes de 1951, los casos federales de expropiación eran proseguidos bajo la *Conformity Act,* 36 Stat. 1167, 40 U.S.C. sec. 258. En 1951 entró en vigor la Regla 71 A de las Reglas Federales de Procedimiento Civil. La Regla 71A (*d*) (2) provee una contestación dentro de 20 días si el demandado desea oponerse a la adquisición de su propiedad. La Regla 71A (*e*) dispone que aun cuando un demandado no tenga objeción a la adquisición, puede radicar su comparecencia. Sin embargo, la Regla 71A (*e*) sigue proveyendo, con referencia a un demandado, que "en el juicio sobre la cuestión de justa compensación, haya o no comparecido o contestado anteriormente, el demandado puede presentar evidencia en cuanto al importe de la compensación a pagarse por su propiedad, y puede participar en la distri-

bución de ésta." Toda vez que la Regla 71A(e) concede al dueño anterior el derecho a ser oído sobre el importe de la compensación a serle otorgada, haya o no comparecido o contestado, parece razonable creer que bajo la regla Federal un demandado que, como aquí, surge de las alegaciones que parece tener un posible interés sustancial en la propiedad expropiada, debe ser notificado de cualquier estipulación para disponer de la compensación, y de la sentencia dictada a base de tal estipulación, o de lo contrario la sentencia sería nula. Véanse Clark, supra; *Comment*, 4 Stan.L.Rev. 266, 272-3; *Comment*, 10 Ohio State L.J. 65, 71. Véase además 3 Moore's *Federal Practice*, 1ra. edición, 1951 *Supp.*, págs. 204-33. ([11])

Nuestra Legislatura tenía conocimiento de la naturaleza especial de los procedimientos de expropiación. No proveyó, sin excepción alguna, como parece creer la Compañía, que las Reglas de Procedimiento Civil, incluyendo las disposiciones sobre rebeldía, serían aplicables a casos de expropiación. Más bien en la Ley creando el Tribunal de Expropiaciones, Ley núm. 223, Leyes de Puerto Rico, 1948 ((1) pág. 775), según fué enmendada por la Ley núm. 178, Leyes de Puerto Rico, 1949 ((1) pág. 561), dispuso en el artículo 3 que "Las Reglas de Enjuiciamiento Civil serán aplicables a los casos de expropiación forzosa, *con excepción de aquellas disposiciones de las reglas que sean claramente incompatibles con la Ley General de Expropiación Forzosa*." (Bastardillas nues-

---

([11]) La Regla Federal 71A*(d)*, después de proveer en el primer párrafo en cuanto a la notificación a los demandados, dice que "el demandado puede notificar al abogado del demandante su contestación dentro del término de veinte días luego de ser emplazado, y el dejar de notificar su contestación .constituirá consentimiento a la adquisición y a la autoridad de la corte para conocer de la acción y fijar la compensación."

La Regla 71A*(e)* prescribe así: *"Comparecencia o Contestación.* Si un demandado no tiene objeción o defensa alguna a la adquisición de su propiedad, podrá radicar una comparecencia en la cual especificará la propiedad sobre la cual alega estar interesado. Luego recibirá dicho demandado notificación de todos los procedimientos que afecten la propiedad. Si un demandado tiene alguna objeción o defensa en contra

tras.) Y, como hemos visto de la discusión anterior, sería claramente inconsistente con las disposiciones, propósito y espíritu de nuestra ley de expropiación forzosa—Ley de Marzo 12, 1903, según ha sido enmendada, particularmente según ha sido enmendada por la Ley núm. 2, Leyes de Puerto Rico, 1941 ((1) pág. 285), Ley núm. 22, Leyes de Puerto Rico, 1942 ((1) pág. 387), Ley núm. 19, Leyes de Puerto Rico, Segunda y Tercera Sesiones Extraordinarias, 1942 ((2) pág. 83), y Ley núm. 216, Leyes de Puerto Rico, 1946 ((1) pág. 423)—el que resolviéramos que un demandado, quien de la faz de las alegaciones tiene un posible interés sustancial en la propiedad expropiada, será considerado en rebeldía, con respecto a la cuestión de compensación, por razón de que no radicó una contestación en el procedimiento. Si bien la Regla Federal 71A expresa este principio con más detalle, nuestro enfoque como resultado de los razonamientos expuestos en esta opinión coincide con la regla Federal a este respecto. Véase *Joint County Park Board, Etc.* v. *Stegemoller*, 88 N.E.2d 686 (Ind., 1949).([12])

---

de la adquisición de su propiedad, éste notificará su contestación dentro de 20 días después de ser emplazado. La contestación identificará la propiedad sobre la cual reclama estar interesado, informará de la naturaleza y alcance del interés que reclama, y especificará todas sus objeciones y defensas a la adquisición de su propiedad. Un demandado renuncia a todas las defensas y objeciones que no sean presentadas como arriba se expresa, pero durante el juicio sobre la cuestión de justa compensación, haya o no comparecido o contestado, podrá presentar evidencia con respecto al importe de la compensación que deberá pagarse por su propiedad, y podrá participar en la distribución de la compensación. No se permitirá ninguna otra alegación o moción que interponga alguna defensa u objeción adicional."

([12]) La Regla Federal 71A*(a)* dispone que "Las Reglas de Enjuiciamiento Civil para las Cortes de Distrito de los Estados Unidos gobiernan el procedimiento para la expropiación de propiedad mueble e inmueble, bajo el poder de expropiación, *a no ser que otra cosa se disponga por esta regla.*" (Bastardillas nuestras.) Véase Clark, *The Proposed Condemnation Rule*, 10 Ohio State L.J. 1, 13–14. Como hemos visto, los incisos *(d)* y *(e)* de la Regla 71A en efecto "otra cosa disponen" en cuanto a rebeldía sobre la cuestión de compensación contra un demandado que deja de contestar.

Resta sólo indicar que nuestra interpretación del artículo 3 de la Ley núm. 223, según fué enmendado por la Ley núm. 178, no se altera por los términos del artículo 6 de la misma Ley. (¹³) El artículo 6 meramente fija el término dentro del cual debe radicarse la contestación, independientemente del sitio del emplazamiento. No quiere decir que, si no se radica contestación alguna por el demandado con un interés similar al de la Sucesión, el demandado esté en rebeldía y está impedido de participar en la compensación. Llegamos a este resultado por implicación, en vista de la peculiar naturaleza del procedimiento de expropiación; la doctrina Federal es la misma debido a las explícitas disposiciones de una regla de procedimiento hecha expresamente para casos de expropiación. Cuando se revisen nuestras Reglas de Enjuiciamiento Civil, quizás debería adoptarse una regla especial de procedimiento para casos de expropiación, análoga a la Regla Federal 71A. Pero creemos que la Ley núm. 223, según fué enmendada por la Ley núm. 178, nuestros estatutos de expropiación, y la naturaleza de un procedimiento de expropiación, requieren que resolvamos que en tal procedimiento no puede anotarse una rebeldía sobre la cuestión de compensación contra un demandado que según demuestran las alegaciones tiene un posible interés sustancial en la propiedad expropiada, debido a que no haya comparecido o no haya radicado una contestación a la demanda. (¹⁴)

---

(¹³) El artículo 6 de la Ley núm. 223 de 1948, según fué enmendada por la Ley núm. 178 de 1949, prescribe en parte como sigue: "En toda acción o procedimiento de expropiación, independientemente del sitio en que sea emplazado, el demandado deberá contestar la demanda dentro del término de veinte (20) días a contar de la fecha de la notificación de la misma, excepto en aquellos casos en que el demandado sea emplazado por edictos."

(¹⁴) Es innecesario añadir que, lo mismo que en la regla Federal, un demandado que deje de contestar la demanda después de haber sido notificado de la misma, no puede luego cuestionar la validez de la adquisición. Para ese fin, se le considera en rebeldía. Aquí, como ya se ha dicho, la Sucesión no cuestiona la validez de la adquisición. Sólo pide compensación. Véase el escolio 10.

 Una vez que hemos decidido que la Sucesión no estaba en rebeldía, a los fines de la compensación, porque dejara de comparecer o de radicar su contestación a la demanda, forzoso es concluir que el gobierno y la Compañía no podían entrar en una estipulación disponiendo de todo el dinero consignado sin notificación a la Sucesión. Tampoco podía el tribunal sentenciador, sin notificar a la Sucesión, dictar válidamente una sentencia basada en tal estipulación. Debido a que las partes y la corte no hicieron tales notificaciones, la sentencia del 8 de marzo de 1949 era nula y estaba sujeta a ataque colateral, independientemente del término prescriptivo de seis meses de la Regla 60(*b*). *United States* v. *247 Acres of Land, Etc.*, 104 F.Supp. 938 (Dist. Ct., Pa., 1952); *United States* v. *Certain Lands, Etc.*, 82 F.Supp. 432 (Dist. Ct., N.Y., 1946).

En *Alcázar* v. *Corte*, supra, resolvimos que una moción de la naturaleza de la aquí radicada, en vista de las disposiciones de la Regla 60(*b*), si "archivada luego de expirado el término de seis meses, debe ser declarada de plano sin lugar, *a no ser que se demuestre que la sentencia en cuestión es nula de su propia faz, caso en el cual la moción puede ser radicada en cualquier tiempo. People* v. *Davis,* 143 Cal. 673, 675; *Rue* v. *Quinn,* 137 Cal. 651, 654; 14 Cal. Jur. 1067." (Bastardillas nuestras.) La misma regla se expone en *Effect of Rule 60b on Other Methods of Relief from Judgment*, 4 Federal Rules Service, 942, 945-6: "Una sentencia, nula de su faz, puede ser dejada sin efecto mediante moción, en cualquier momento, y el término de seis meses provisto en la Regla 60*b* no es aplicable." Y véanse *Stubbs* v. *United States*, 21 F.Supp. 1007 (Dist. Ct., N.C., 1938); *Williams* v. *North Carolina*, 325 U.S. 226; *Pennoyer* v. *Neff*, 95 U.S. 714; Moore y Rogers, *Federal Relief From Civil Judgments*, 55 Yale L.J. 623, 692; *Olmedo* v. *Rivera*, 65 D.P.R. 49, 52.

En vista de nuestra decisión de que la Sucesión no estaba en rebeldía por haber dejado de contestar la demanda, casos

como *Bass* v. *Hoagland,* 172 F.2d 205 (C.A. 5, 1949), *Hill* v. *Hawes,* 320 U.S. 520, y *Klapprott* v. *United States,* 335 U.S. 601, si bien no estrictamente aplicables, refuerzan nuestra conclusión de que el dejar de notificar a la Sucesión de la estipulación entre el Pueblo y la Compañía así como también de la moción solicitando sentencia a base de la estipulación, trajo como resultado la nulidad de la sentencia.

 Quizás se podría argumentar que este resultado beneficia grandemente a la Sucesión, ya que el testimonio demuestra que cuando sus miembros fueron notificados del procedimiento, éstos nunca tuvieron la intención de comparecer a la vista, y que uno de sus miembros, a través de su hija, que es abogada, informalmente impuso al abogado del gobierno de tal situación. Véase el escolio 4. Pero tales aseveraciones informales no constituyen suficiente justificación para dejar de notificar a la Sucesión de la estipulación y de la moción solicitando sentencia. No nos detenemos a determinar cuál sería la situación si el Pueblo y la Compañía hubieran tomado la precaución de notificar a la Sucesión tanto de la estipulación como de la moción sobre sentencia basada en la primera, y la Sucesión hubiera dejado de oponerse a ellas.([15]) A nuestros fines, baste decir que no se hicieron tales notificaciones. La Sucesión por tanto puede seguir adelante con su reclamación, no empece haber radicado la misma tardíamente.

 Ya hemos indicado que esta regla—un demandado que ha sido emplazado de un procedimiento de expropia-

---

([15]) *Si de los autos se desprendiera afirmativamente, sin lugar a dudas, que la Sucesión tenía derecho a alguna compensación,* aun el haber dejado de oponerse cuando se le notificó, quizás podría no ser suficiente, a tenor con las autoridades antes discutidas, para justificar el que no se les concediese participación alguna en los fondos consignados; *quaere,* si como aquí el derecho de la Sucesión a la compensación está en controversia. En situaciones similares en los casos radicados por los Estados Unidos se nos ha informado que los Fiscales Federales frecuentemente obtienen de las partes afectadas, con el fin de radicarlos en corte, documentos escritos renunciando a cualquier interés en el fondo consignado.

ción tiene derecho a ser oído sobre la disposición de la compensación, aun cuando deje de comparecer o contestar—se aplica solamente si de la demanda y de los exhibits a ella acompañados surge afirmativamente que el demandado supuestamente en rebeldía tiene un posible interés sustancial en la propiedad expropiada. Creemos que ésta es la situación en este caso. El exhibit I de la demanda dice que la Compañía obtuvo el título a la propiedad expropiada por una escritura de cesión en 1897 del causante de la Sucesión. Y es precisamente sobre el contenido de esta escritura que la Sucesión basa su reclamación. La escritura dice que "En vista pues de las notorias ventajas que para ambas partes resultarían de las obras antes mencionadas", el causante de la Sucesión "cedió gratuitamente" a la Compañía la parcela de 1,125 metros cuadrados "para el establecimiento e instalación del apeadero . . . ". Sigue diciendo la escritura que la Compañía "podrá suprimir el apeadero si resultase perjudicial a sus intereses debiendo en este caso justificarla en debida forma, restituyendo al cedente, Señor Vicente, el dominio de la parcela de terreno cedida por éste con tal objeto." En su moción para dejar sin efecto la sentencia la Sucesión alegó que *desde mucho antes de iniciarse estos procedimientos de expropiación,* la Compañía había dejado de usar la parcela como apeadero. Por consiguiente arguye que la parcela revirtió a la Sucesión y que pertenecía a ésta y no a la Compañía cuando se inició el procedimiento de expropiación. Si la Sucesión puede probar estos hechos, este caso quizás se podría distinguir del de *People of Puerto Rico* v. *United States,* 132 F.2d 220 (C.A. 1, 1942), en el que la corte resolvió que una posibilidad similar de reversión no era un interés compensable en una propiedad que fué expropiada *antes de que ocurriera el evento que diera motivo a la reversión.* Véanse 2 Nichols *on Eminent Domain,* 3ra. ed., págs. 32–35; *Restatement, Property,* sec. 53 (*b*) (*c*), pág. 187 et seq.; 43 Col.L.Rev. 137; 29 Cal.L.Rev. 525. *Cf. Municipio* v. *Río*

*Piedras Development Co.*, 69 D.P.R. 599, 603, escolio 2; *Figueroa* v. *Guerra*, 69 D.P.R. 607, 615, escolio 4; *Zayas* v. *Junta de Planificación*, 69 D.P.R. 30, 39.

No insinuamos nuestro criterio sobre los méritos de la reclamación de la Sucesión. Resolvemos solamente que los autos ante el tribunal sentenciador demostraban de su faz que la Sucesión tenía un posible interés sustancial en la propiedad expropiada. Por tanto, el tribunal sentenciador no podía disponer de la compensación sin notificar de ello a la Sucesión. Existe controversia entre las partes sobre (1) el significado de las inscripciones en el Registro de la Propiedad con referencia a los respectivos intereses de la Compañía y de la Sucesión, y (2) el alegado cese del uso de la parcela como apeadero. Pero estas cuestiones sólo pueden resolverse después de una vista sobre los méritos de la reclamación de la Sucesión. En su consecuencia dejaremos sin efecto la sentencia basada en la estipulación entre el Pueblo y la Compañía y devolveremos el caso al Tribunal Superior el cual, después de oír prueba, resolverá en los méritos la controversia existente entre la Sucesión y la Compañía.

A fin de enfocar nuestra conclusión de manera más aguda, creemos conveniente exponer un caso hipotético que demuestra gráficamente los peligros inherentes a la posición asumida por la Compañía. Supongamos que A es dueño de una parcela de dos cuerdas de terreno inscrita a su nombre. B es dueño de una parcela contigua de dos cuerdas que también aparece inscrita a su nombre. Ambas parcelas tienen exactamente el mismo valor. El Pueblo radica un procedimiento de expropiación contra las cuatro cuerdas de terreno. Incluye en la demanda a A y B como demandados. La demanda alega lo anteriormente expuesto en cuanto a quiénes son los dueños de las dos parcelas. Sin embargo, A radica una contestación alegando que él es dueño de ambas parcelas. B no radica contestación alguna y el secretario de la corte como cuestión de rutina anota la rebeldía contra B. Posterior-

mente, y sin que se notificara a B, el Pueblo y A firman una estipulación al efecto de que (1) todos los fondos consignados, más una suma adicional convenida entre el Pueblo y A, constituyen la justa compensación para las cuatro cuerdas, y (2) que debe entregarse toda la compensación a A. La corte procede, sin notificar a B, a dictar sentencia ordenando el pago de todo el dinero consignado a A.

Creemos que en este caso supuesto, trece meses después, B tendría derecho a una resolución (1) dejando sin efecto la sentencia por ser nula por no notificarse a B, y (2) recabando de A que devuelva al secretario de la corte la mitad de la suma que él recibió con el fin de que la corte pueda luego ordenar su pago a B. Reconocemos, desde luego, que el caso de autos no es tan claro como el ejemplo que acabamos de exponer. Pero la diferencia entre las dos situaciones es sólo una cuestión de grado. El principio predominante es el mismo en ambos casos; es decir, si las alegaciones demuestran afirmativamente como en el caso de autos que B, una parte que ha sido demandada en el procedimiento, tiene un posible interés sustancial en la propiedad expropiada, el gobierno y otro demandado no pueden entre ellos llegar a un acuerdo sobre la cuestión de la distribución de todà la compensación sin notificación a B, aun cuando B haya dejado de contestar la demanda.

Nos damos cuenta de los problemas que nuestra decisión en este caso puede crear en relación con la disposición de los casos de expropiación. Pero no hay necesidad de dificultad sustancial si el alcance de nuestra decisión es bien entendido. Reconocemos que el gobierno, para mayor precaución, algunas veces incluye como demandados a personas que obviamente no tienen interés en la propiedad expropiada. Estos demandados no tienen que ser notificados de ulteriores escritos, si dejan de comparecer o contestar. Un demandado que no radica su contestación debe ser notificado de solicitudes para retirar los fondos consignados o de señalamientos de

vistas sobre la cuestión de compensación, solamente si, como ocurre en este caso, de las alegaciones se desprende afirmativamente que existe un posible interés sustancial en la propiedad expropiada que pertenece a tal demandado. Cuando exista alguna duda sustancial, las partes deben, desde luego, notificar a los demandados de todos los pasos a efectuarse en relación con la disposición del dinero consignado.

*Por los motivos antes expuestos, la resolución del anterior Tribunal .de Expropiaciones declarando sin lugar la moción para dejar sin efecto la sentencia del 8 de marzo de 1949 será revocada, se dictará una nueva resolución dejando sin efecto la sentencia del 8 de marzo de 1949, y se devolverá el caso al Tribunal Superior para ulteriores procedimientos consistentes con esta opinión.*

Los Jueces Asociados Señores Ortiz y Belaval no intervinieron.