ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y apelado, *v.* COMPAÑÍA DE LOS FERROCARRILES DE PUERTO RICO, SUCN. AVELINO VICENTE GONZÁLEZ *y* SUCN. ANA SEGUNDA AGUAYO HERNÁNDEZ, ETC., demandadas, apelada la primera demandada, y apelantes las dos sucesiones.

*Número:* 12155. *Resuelto:* 28 de septiembre de 1961.

*Eduardo Urrutia Martorell,* abogado de las Sucesiones apelantes; *Hartzell, Fernández y Novas y Jaime Pieras, Jr.,* abogados de la Compañía de los Ferrocarriles de Puerto Rico, apelada.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Serrano Geyls y Rigau.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este caso es una secuela de *Pueblo* v. *632 Metros Cuadrados de Terreno,* 74 D.P.R. 961 (1953). Los hechos pertinentes para nuestro propósito pueden resumirse como sigue. En 1897 don Avelino Vicente González, mediante escritura pública, cedió gratuitamente a la Compañía de los Ferrocarriles de Puerto Rico una parcela de terreno de 45 metros de largo por 25 metros de ancho, contigua a la vía del tren, con la condición de que la Compañía de los Ferrocarriles estableciese allí un apeadero. Dicha parcela se segregó de una finca mayor, de 89 cuerdas, que allí poseía don Avelino, en Santurce, y que luego fue urbanizada. Reconocieron ambas partes en la escritura las mutuas ventajas que esa transacción les producía y además pactaron que la Compañía podría suprimir el apeadero, debiendo en este caso restituir al ce-

dente el dominio de la parcela. Estableció la Compañía el apeadero; pasaron los años y en el 1948 el Gobierno de Puerto Rico expropió 632 metros cuadrados de terreno que se segregaron de la parcela (de 1,125 metros) que fue objeto de la cesión antes mencionada.

Intervino la Sucesión de don Avelino Vicente en los procedimientos y alegaron que son ellos los únicos dueños de dicha parcela, que la Compañía de los Ferrocarriles carecía de todo título, derecho e interés sobre la parcela, que desde antes de la expropiación la Compañía había abandonado el uso del apeadero, que el dominio de la parcela revirtió a ellos y que a ellos corresponde el precio pagado por el Gobierno por el terreno expropiado.

Visto el caso en el Tribunal Superior éste declaró sin lugar la reclamación de la Sucesión de don Avelino Vicente González. Los recurrentes señalan que el Tribunal a quo cometió error (1.) en la apreciación de la prueba "al concluir como cuestión de hecho, que la posibilidad de reversión que tenía la Sucesión Vicente no era inminente a la fecha del procedimiento de expropiación forzosa, ni que dicho derecho de reversión naciera, ni antes ni después del 30 de diciembre del 1948"; (2) "al apreciar los hechos en relación con la ley y la jurisprudencia por resultar la prueba de la Compañía del tren insuficiente como cuestión de derecho, y contraria a la doctrina legal ya establecida en este mismo caso" en *Pueblo* v. *632 Metros Cuadrados de Terreno*, supra; (3) al absolver de responsabilidad a la Compañía del tren y a la parte expropiante. (El 30 de diciembre de 1948 es la fecha en que tuvo lugar la expropiación.)

La escritura de cesión antes mencionada constituyó una donación de inmuebles con cláusula o condición resolutoria. Arts. 558, 575, 583 y 1066 del Código Civil; 31 L.P.R.A. secs. 1981, 2010, 2028 y 3041, respectivamente; 5 Manresa, *Código Civil Español*, 6a. ed., 1951, págs. 165–166; 4 Castán, *Derecho Civil Español, Común y Foral*, 8a. ed., 1956, pág. 197.

La condición consistía en que si la Compañía del Ferrocarril suprimía el apeadero entonces venía obligada a restituir al cedente el dominio de la parcela.

Practicada la prueba el Tribunal de instancia concluyó que cuando el Gobierno expropió los terrenos en 1948 la Compañía del tren estaba utilizando el apeadero para los propósitos para los cuales fue establecido. También concluyó el Tribunal que no era inminente el que la Compañía abandonase el apeadero. La Compañía había suspendido algunos trenes pero no otros y estaban dando el servicio y utilizando el apeadero al ser expropiada. Estaban operando los trenes números 1, 2, 4, 5 y 8. No fue hasta varios meses *después* de la expropiación, en 18 de mayo de 1949, que la Compañía solicitó permiso de la Comisión de Servicio Público para suspender todos los trenes de pasajeros, y no fue hasta el primero de junio de 1950 que la Comisión le concedió dicho permiso. No encontramos razón para desechar la apreciación de la prueba que hizo el Tribunal de instancia. Es nuestra norma sostener la apreciación que de la prueba hacen los jueces sentenciadores, excepto en casos de error manifiesto, de clara arbitrariedad o de prejuicio y pasión. Regla 43, de las de Procedimiento Civil; *Pueblo* v. *Amadeo*, 82 D.P.R. 102 (1961); *Vargas* v. *Sánchez*, 79 D.P.R. 800 (1957); *Martín* v. *Torres*, 79 D.P.R. 391 (1956); *Rutledge* v. *Gill*, 78 D.P.R. 698 (1955); *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816 (1953); *Palmer* v. *Barreras*, 73 D.P.R. 278 (1952); *Sucn. Muñoz* v. *Cepeda*, 72 D.P.R. 593 (1951); *Santiago* v. *Rodríguez*, 72 D.P.R. 266 (1951); *Correa* v. *Mercado*, 72 D.P.R. 80 (1951). Siendo esto así, no ocurrió el evento que hubiese dado motivo para la reversión del dominio de la parcela al cedente; la donación estaba en todo su vigor al tiempo de la expropiación y la reversión nunca ocurrió. Código Civil, Art. 1067; 31 L.P.R.A. sec. 3042.

Al no ocurrir la reversión, el precio pagado por los terrenos en cuestión por el expropiante pertenece a la Compañía del Ferrocarril que era quien tenía título de dominio sobre los

terrenos al ser expropiados. La mera posibilidad que tenía el cedente a su favor de que la parcela revirtiese a él en el futuro no es un interés compensable. 2 Nichols, *The Law of Eminent Domain*, 3rd ed., sec. 5.221(1), p. 33; *People of Puerto Rico* v. *United States et al.*, 132 F.2d 220, 222 (1942), certiorari denegado en 319 U.S. 752, 87 L.ed 1706, citado con aprobación en *Beard's Erie Basin Inc.* v. *People of New York*, 142 F.2d 487, 489 (1944); *Carter v. N.Y. Central Railroad Co.*, 73 N.Y.S.2d 610, 615 (1947), confirmado en 77 N.Y.S.2d 265 (1948), y en 80 N.E.2d 671 (1948).

Hay una larga serie de decisiones explícitas y consistentes en el sentido de que la posibilidad de reversión al cedente no constituye un derecho o interés compensable cuando—como en el caso de autos—la propiedad es expropiada por el Estado o por un organismo público antes de que ocurra el evento que hubiese causado la reversión. Por ejemplo, *People* v. *City of Los Angeles*, 4 Cal. Rptr. 531 (1960); *State* v. *Cooper*, 131 A.2d 756 (1957); *Carter* v. *N.Y. Central Railroad Co.*, supra; *Beard's Erie Basin Inc.* v. *People of New York*, supra; *People of P.R.* v. *U.S.*, supra; *Matter of City of New York*, 38 N.Y.S.2d 25 (1942); *U.S.* v. *1846 Acres of Land*, 48 F.S. 721 (1942); *U.S.* v. *1119 Acres of Land*, 44 F.S. 449 (1942); *First Reformed Dutch Church of Gilboa* v. *Croswell*, 206 N.Y.S.132 (1924); *New Haven County* v. *Parish of Trinity Church*, 73 A. 789 (1909); *Scovill* v. *MacMahon*, 26 A. 479 (1892). Esto es así porque el donatario no puede evitar la expropiación de que es objeto. Toda propiedad se posee sujeta al poder del estado de expropiarla para fines públicos. *People v. City of Los Angeles*, supra, pág. 541. De manera que no puede imputársele al donatario que ha violado la condición resolutoria porque haya sido expropiado.

El caso de *Carter* v. *New York Central Railroad Co.*, supra, es muy parecido al de autos. La sucesión del cedente reclamó la suma pagada por la Ciudad de Nueva York a la N.Y. Central Railroad Co. al aquella expropiarle terrenos a dicha compañía ferroviaria que el causante de los recla-

mantes le había donado condicionalmente. La condición exigía que la propiedad cedida fuese utilizada por la compañía para determinados propósitos. La sucesión reclamante alegó que la compañía había violado la condición resolutoria porque en el año 1926 la compañía solicitó y obtuvo permiso de las autoridades para suprimir la estación en conexión con la cual se utilizaba la propiedad donada. Es de notar que en este caso de *Carter* la Ciudad expropió en el 1927, cuando ya la compañía tenía el permiso para suprimir la estación aunque antes de que realmente la hubiese suprimido. (Como hemos visto, en el caso de autos la Compañía solicitó el permiso para suspender los trenes de pasajeros cuatro meses y medio *después* de la expropiación.) El Tribunal declaró sin lugar la demanda de la Sucesión Carter. Sostuvo que hasta que no ocurriese de hecho la violación de la condición resolutoria no había nacido la reversión, y que todo lo que tenían los herederos hasta ese momento era la posibilidad de que la reversión ocurriese y declaró que dicha posibilidad no era compensable.

En nuestro caso la Sucn. Vicente alega que la supresión del apeadero era inminente, o sea, que amenazaba ocurrir inmediatamente, sin dilación, cuando la parcela fue expropiada. Creemos que el Tribunal a quo decidió correctamente al determinar que no lo era. La prueba demostró que el apeadero no se suprimió hasta el año 1953 y la expropiación tuvo lugar a fines del 1948.

Por lo que dejamos expresado concluimos que el Tribunal de instancia no cometió el error número uno. Tampoco cometió el error número dos porque creemos igual que el Tribunal a quo que la prueba de la Compañía fue suciente para sostener la sentencia y porque dicha sentencia no es contraria a lo que resolvimos en *Pueblo* v. *632 Metros Cuadrados de Terreno*, supra. Lo que allí dijimos, a las págs. 983 y 984 fue lo siguiente: "En su moción para dejar sin efecto la sentencia la Sucesión alegó que desde mucho antes de iniciarse estos procedimientos de expropiación, la Compañía

había dejado de usar la parcela como apeadero. Por consiguiente arguye que la parcela revirtió a la Sucesión y que pertenecía a ésta y no a la Compañía cuando se inició el procedimiento de expropiación. Si la Sucesión puede probar estos hechos, este caso *quizás* se podría distinguir del de *People of Puerto Rico* v. *United States,* 132 F.2d 220 (CA 1, 1942) en el que la corte resolvió que una posibilidad similar de reversión no era un interés compensable en una propiedad que fue expropiada antes de que ocurriera el evento que diera motivo a la reversión. *No insinuamos nuestro criterio sobre los méritos de la reclamación de la Sucesión.* Resolvemos solamente que los autos ante el tribunal sentenciador demostraban de su faz que la Sucesión tenía un posible interés sustancial en la propiedad expropiada. Por tanto, el tribunal sentenciador no podía disponer de la compensación sin notificar de ello a la Sucesión. Existe controversia entre las partes sobre (1) el significado de las inscripciones en el Registro de la Propiedad con referencia a los respectivos intereses de la Compañía y de la Sucesión, y (2) el alegado cese del uso de la parcela como apeadero. Pero estas cuestiones sólo pueden resolverse después de una vista sobre los méritos de la reclamación de la Sucesión. En su consecuencia dejaremos sin efecto la sentencia basada en la estipulación entre el Pueblo y la Compañía y devolveremos el caso al Tribunal Superior el cual, después de oír prueba, resolverá en los méritos la controversia existente entre la Sucesión y la Compañía." (Citas omitidas. Enfasis suplido.)

Exactamente eso fue lo que se hizo. El Tribunal Superior, después de oír la prueba resolvió sobre los méritos de la controversia entre la Sucesión y la Compañía del tren. Esa es la resolución que estamos ahora examinando a instancia de la Sucn. Vicente. Por lo antes expresado es necesario concluir que tampoco se cometió el error número tres.

*Se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 24 de octubre de 1956.*