IDALIA MARÍA CAROLINA y CHARLES R. MCCORMICK MURDOCK, ENRIQUE CALIMANO DÍAZ y MARGARITA GANDÍA SKERRET, peticionarios y apelantes, *v.* HON. B. MARRERO RÍOS, JUEZ, CORTE DE DISTRITO DE GUAYAMA, demandado y apelado.

Núm. 9041.—*Sometido:* Septiembre 5, 1944. *Resuelto:* Diciembre 7, 1944.

*Benicio Sánchez Castaño* y *Félix Ochoteco, Jr.,* abogados de los peticionarios apelantes; *Hon. Procurador General Interino Fernando B. Fornaris (Jesús A. González,* en el alegato) y *Francisco A. Arrillaga* y *Antonio Riera,* abogados de la interventora, Autoridad de Tierras de Puerto Rico, demandante en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En agosto 29 de 1944, encontrándose esta Corte Suprema en vacaciones, los peticionarios apelantes radicaron una petición en la cual solicitaban la expedición de un auto dirigido al Juez y a la Corte de Distrito de Guayama, requiriéndoles a mostrar causa por las cuales no debiera expedirse un auto inhibitorio prohibiéndoles continuar entendiendo en una causa de expropiación forzosa pendiente ante dicha corte; y en la alternativa, que se expidiera un auto de *certiorari* para revisar y anular la resolución de agosto 11 de 1944, dictada por dicha corte en la mencionada causa de expropiación.

En septiembre 30 de 1944, después de haber oído a las partes en cuanto a la procedencia del auto inhibitorio solicitado, el Juez Asociado Sr. Todd, actuando en funciones de turno, declaró no haber lugar a su expedición. En cuanto a la procedencia del auto de certiorari bajo la Ley número 32 de 1943 (pág. 85), el citado juez reservó la cuestión para ser resuelta por el tribunal en pleno. En octubre 9 de 1944, el tribunal declaró sin lugar la petición de certiorari.

En octubre 3 de 1944 los peticionarios solicitaron la revisión por el tribunal en pleno de la resolución del Juez de Turno denegando la petición de auto inhibitorio. El caso ha sido sometido a nuestra consideración por las alegaciones y memoranda sometidos al juez recurrido.

██ He aquí una síntesis de los hechos alegados en la petición:

En diciembre 29 de 1943, El Pueblo de Puerto Rico radicó ante la Corte de Distrito de Guayama una demanda sobre expropiación de una finca propiedad de los peticionarios, para beneficio y uso de la Autoridad de Tierras de Puerto Rico y para ser aparcelada y distribuída entre un número de "agregados", con el fin de que éstos puedan erigir sus viviendas, a tenor de lo dispuesto en el Título V de la Ley de Tierras de 12 de abril de 1941. En la demanda se describe la finca como de 129.33 cuerdas y se ofrece a los demandados la suma de $16,714.95 en pago del inmueble con sus plantaciones y mejoras. La indicada suma fué depositada mediante cheque en la Corte de Distrito de Guayama.

En la misma fecha en que se radicó la demanda, El Pueblo de Puerto Rico radicó una "petición de declaración de adquisición y entrega material de posesión", de conformidad con lo dispuesto por la sección 5A de la "Ley estableciendo la expropiación forzosa de la propiedad particular", de marzo 12, 1903, enmendada por la Ley número 19 de 30 de noviembre de 1942, y también otro escrito titulado "declaración de adquisición y entrega material de posesión".

En enero 13 de 1944, la corte de distrito dictó una resolución al efecto de que a partir de esa fecha el título de dominio sobre la finca objeto de la expropiación quedó investido en El Pueblo de Puerto Rico a beneficio de la Autoridad de Tierras; y que El Pueblo tiene derecho a la inmediata posesión y entrega de la propiedad, tan pronto los dueños de la misma sean notificados con copia de la resolución.

En febrero 8, 1944 los peticionarios solicitaron la anulación de la resolución de enero 13 de 1944, alegando que la corte carecía de jurisdicción para dictarla por los siguientes motivos:

(*a*) Porque la sección 5A adicionada a la Ley de Expropiación Forzosa por la número 2 de 1941 ((1) pág. 285) es nula e inconstitucional porque no provee ni asegura la existencia de fondos para pagar la compensación cuando ésta sea determinada finalmente.

(*b*) Porque la ley enmendatoria número 19 de 30 de noviembre de 1942 ((2) pág. 83), tampoco provee fondos específicos para hacer que la expropiación sea constitucional.

(*c*) Porque el fin para el cual se expropia la finca no constituye un uso público.

En agosto 11, 1944 la corte inferior declaró sin lugar la moción, quedando así en pie la resolución de enero 13 del mismo año.

Continúan alegando los peticionarios, que la orden de enero 13, confirmada por la de agosto 11 de 1944, fué dictada sin jurisdicción, por las razones ya expuestas, y además, que si dicha orden no es anulada, los peticionarios serán privados de su propiedad sin un debido proceso de ley y también de su derecho constitucional a una justa compensación, ya que no existe ley alguna haciendo asignación adecuada para el pago de la justa compensación que pudiera fijar la corte; que los peticionarios carecen de remedio adecuado en ley, salvo por medio de un auto inhibitorio; que

asumiendo que la resolución sea apelable, la apelación no podría ser vista y resuelta hasta mucho después de haberse privado a los peticionarios de la posesión del inmueble y cuando ya los peticionarios habrían sufrido daños irreparables.

Con posterioridad a nuestra decisión en el caso de *Puerto Rico Railway, Light & Power Co.* v. *Benjamín Ortiz, Juez*, 59 D.P.R. 921, en el cual se levantaron las mismas cuestiones que ahora levantan los aquí peticionarios y resolvimos que procedía la expedición del auto inhibitorio solicitado, la legislatura insular aprobó la Ley número 19 de noviembre 30 de 1942 (Leyes de ese año, sesión extraordinaria, pág. 95) con el propósito de corregir el defecto existente en la Ley de Expropiación Forzosa, la cual no hacía una adecuada provisión de fondos para el pago de la compensación que en definitiva fijase la corte. La referida ley enmendatoria, en cuanto es pertinente, lee así:

"Sección 5(*b*).—En cualquier sentencia dictada en un procedimiento de expropiación forzosa para la adquisición de propiedad privada o de cualquier derecho sobre la misma para uso público o aprovechamiento en beneficio de la comunidad, entablado por El Pueblo de Puerto Rico o Gobierno Insular directamente, o a su nombre por cualquier agencia, autoridad, instrumentalidad o funcionario de El Pueblo de Puerto Rico, en que la cantidad determinada por la corte como justa compensación por la propiedad o los derechos en la misma objeto de tal procedimiento sea mayor que la cantidad fijada por el demandante o depositada en corte como justa compensación por tal propiedad o derechos en la misma, El Pueblo de Puerto Rico pagará el importe de la diferencia entre la suma así fijada por el demandante y depositada por él en la corte y la cantidad que a tal efecto haya determinado la corte como justa compensación por la propiedad o derechos en la misma objeto de tal procedimiento, con intereses a razón de seis por ciento anual sobre tal diferencia a contar desde la fecha de la adquisición de tal propiedad o derechos y desde esta fecha hasta la del pago de dicha diferencia.

"Tan pronto la sentencia referida en el párrafo anterior sea final e inapelable, el Tesorero de Puerto Rico pagará al demandado en

dicho procedimiento de expropiación el importe de la diferencia que se especifica en el párrafo anterior, con intereses sobre la misma, tal como allí se dispone; y el Tesorero de Puerto Rico procederá a pagar tal diferencia y los intereses sobre la misma, como se dispone en esta sección, con cargo a cualesquiera fondos existentes en la Tesorería Insular no destinados a otras atenciones.

"Para el pago total de la diferencia mencionada en los párrafos anteriores y los intereses sobre la misma, como aquí se dispone, se compromete irrevocablemente la buena fe de El Pueblo de Puerto Rico.

"Por la presente se asigna de cualesquiera fondos existentes en la Tesorería Insular no destinados a otras atenciones las cantidades necesarias para llevar a cabo las disposiciones de esta sección."

La citada disposición legal es más amplia y más específica que la ley federal sobre la materia, titulada "Declaration of Taking Act". Véase U.S.C.A., Título 40, sec. 258 e. La validez constitucional del estatuto federal ha sido sostenida por las cortes federales, las cuales han resuelto en repetidas ocasiones que las disposiciones del estatuto satisfacen los requisitos de la Enmienda 14, sec. 1 de la Constitución, que prohibe la incautación de propiedad privada sin el debido proceso de ley o sin justa compensación. Véanse: *United States* v. *47.21 Acres of Land, Parcel No. 5*, D.C. Ky., 1943, 48 F. Supp. 73; *Hessel* v. *A. Smith & Co.*, D. C. Ill., 1936, 15 F. Supp. 953.

Nuestro estatuto local, supra, ofrece plenas garantías al demandado en expropiación de que la diferencia que pueda haber a su favor entre la cantidad depositada y la que en definitiva fijare la corte en su sentencia, le será pagada por el Tesorero de Puerto Rico, con sus intereses.

█ █ El último fundamento de la petición para que expidamos un auto inhibitorio es que el fin para el cual se expropia la finca de los peticionarios no es un uso público.

En la demanda de expropiación radicada por El Pueblo de Puerto Rico, se alega que "la Autoridad de Tierras de Puerto Rico interesa la expropiación de la finca descrita en el precedente primero, para distribuirla y cederla a un nú-

mero de 'agregados' a razón de una parcela no menor de una cuarta parte de cuerda de tierra (cuadro) por familia, en la cual erigir dichos 'agregados' sus viviendas''.

En la ''Exposición de Motivos'' que precede a la Ley núm. 26, aprobada en abril 12 de 1941 ((1) pág. 389), titulada ''Ley de Tierras de Puerto Rico'', se declara expresamente que: ''También es parte integrante del propósito moral, de dignidad y libertad económicas encarnado en la política pública de la Legislatura, el facilitar los medios para que desaparezca de Puerto Rico la clase de 'agregados', o sea de trabajadores agrícolas esclavizados por el hecho de no ser dueños ni siquiera del pedazo de terreno donde tienen sus hogares;''.

El artículo 7 de la misma ley, según fué enmendado por la Ley núm. 197 de mayo 11 de 1942, Leyes de ese año, pág. 997, provee que la Autoridad de Tierras se crea, entre otros, con el fin de ''ayudar a la formación de nuevos propietarios, facilitar el aprovechamiento de las tierras para el mayor bien público bajo planes de producción eficiente y económica, proveer medios para que los agregados y moradores de arrabales puedan adquirir predios de terrenos en los cuales enclavar sus viviendas y para efectuar todos los actos conducentes al más científico, económico y eficiente disfrute de las tierras por el pueblo de Puerto Rico''.

Para llevar a efecto los propósitos mencionados en la Ley, el artículo 8 de la misma confiere a la Autoridad de Tierras ''todos los derechos y poderes que sean necesarios o convenientes'', para ''(g) adquirir tierras por compra, cesión, traspaso, permuta, arrendamiento, legado, donación, o por el ejercicio del poder de expropiación forzosa en la forma que proveen esta ley y las leyes de Puerto Rico . . .''.

El artículo 74 de la Ley de Tierras provee que con el fin de promover el bienestar, la libertad económica y la justicia social de los agregados, ''se declara que es el objeto de este título que todo agregado tenga el derecho, por lo menos, a

ser dueño de un cuadro de tierra en el cual donde (*sic*) levantar permanentemente su hogar''.

La Legislatura tiene amplia discreción para determinar qué es lo que constituye un fin público y para tomar aquellas medidas que a su juicio promuevan el bienestar de la comunidad. No es función de los tribunales la de expresar opinión sobre la sabiduría o conveniencia de una medida legislativa. Si ésta contiene elementos de beneficio público y el propósito que se trata de realizar es de carácter público, la cuestión en cuanto al beneficio que haya de recibir el público debe ser resuelta por la Legislatura y no por los tribunales. La presunción en favor del fin público que se propone alcanzar, es más fuerte cuando la expropiación se hace a nombre del gobierno y no por una corporación privada. *New York City Housing Authority* v. *Muller,* 1 N. E. (2d) 153, 105 A.L.R. 905; *Krause* v. *Peoria Housing Authority,* 19 N. E. (2d) 193; *Dornan* v. *Phila. Housing Authority,* 200 Atl. 834.

Es deber de todo gobierno, adoptar aquellas medidas que fueren necesarias para promover el bienestar y defender la salud de todos los ciudadanos, especialmente de aquellos a quienes sus escasos medios de fortuna no les permiten adquirir un pedazo de tierra para edificar en ella sus hogares. Basta leer las disposiciones pertinentes de nuestra Ley de Tierras, de acuerdo con las cuales se trata de expropiar la finca de los peticionarios, para convencernos de que el fin a que habrá de dedicarse la finca objeto de la expropiación es uno de carácter público y que a nuestro juicio habrá de contribuir grandemente a levantar el standard de vida de nuestras clases trabajoras. Son numerosas las autoridades estatales que sostienen la validez de la expropiación de fincas privadas para ser dedicadas a la eliminación de arrabales y para proveer de hogares a personas de escasos recursos económicos por tratarse de un uso público. Véanse: 29 C.J.S. 851, sec. 64; 105 A.L.R. 911; *Willmon* v. *Powell,* 91 Cal. App.

1, 266 Pac. 1029; *Simon* v. *O'Toole,* N.J.L. 32, 155 Atl. 449; *Oklahoma City* v. *Sanders,* 94 F. (2) 323; y *United States* v. *Certain Lands in City of Louisville, etc.,* 78 F. (2d) 684.

 La contención de los peticionarios de que estando la finca bajo cultivo, sembrada de palmas de cocos, no puede ser expropiada para ser dividida en parcelas, carece de méritos. Las plantaciones o edificaciones que puedan existir en una finca en el momento en que se inicia la expropiación nada tienen que ver con el uso público a que haya de dedicarse el inmueble una vez expropiado.

Por las razones expuestas, opinamos que no erró el juez recurrido al declarar sin lugar la petición de un auto inhibitorio.

*La resolución recurrida debe ser confirmada.*

El Juez Asociado Sr. Todd, Jr., se inhibió.