EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Carreteras y Transportación de Puerto Rico<br><br>Peticionaria<br><br>v.<br><br>Roberto Iñesta Nazario<br><br>Recurrido | Certiorari<br><br>2005 TSPR 150<br><br>165 DPR _____ |

Número del Caso: CC-2004-622

Fecha: 19 de octubre de 2005

Tribunal de Circuito de Apelaciones:

        Región Judicial de San Juan-Panel II

Juez Ponente:

        Hon. Carlos Rivera Martínez


Abogados de la Parte Peticionaria:

        Lcda. Grace M. Santana Balado
        Lcdo. Eric Y. Reyes Colón

Abogada de la Parte Recurrida:

        Lcda. Amarilys González Alayon


Materia: Expropiación Forzosa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Carreteras y
Transportación de Puerto Rico

     Peticionaria

        v.                  CC-2004-622

Roberto Iñesta Nazario

     Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico a 19 de octubre de 2005

Nos corresponde resolver en esta ocasión si transcurridos más de dos años de haber finalizado un procedimiento de expropiación forzosa, procede autorizar la intervención en el mismo de un acreedor hipotecario que advino como tal con posterioridad a la presentación de la petición, pero antes de la vista de justa compensación y quien no había sido notificado del procedimiento pendiente.

**I**

El 14 de marzo de 2001, la Autoridad de Carreteras y Transportación de Puerto Rico ("la Autoridad" o "ACT") presentó ante el Tribunal de Primera Instancia una petición de expropiación

forzosa para la adquisición de una parcela de terreno localizada en la Sección Sur del Barrio Santurce, denominado Tras Miramar, con cabida de 140.00 metros cuadrados. Dicho terreno era necesario para llevar a cabo el proyecto ACT-002682 "Highway P.R. 26 & Muñoz Rivera Expressway", según se hizo constar en la "Declaración de Utilidad Pública para la Adquisición y Entrega Material de la Propiedad" que acompañó la petición.

Junto a la petición presentada, la ACT consignó la cantidad estimada como justo valor de la propiedad, que ascendió a $114,000.00. El legajo de expropiación forzosa estuvo acompañado también con una certificación registral expedida el 23 de mayo de 2000, actualizada al 13 de diciembre de ese mismo año.[1]

En atención a la información que se desprende de la certificación registral, la Autoridad incluyó como partes con interés al Sr. Roberto Iñesta Nazario, como titular de la propiedad; a la Corporación del Fondo de Seguro del Estado, por tener inscrito un embargo sobre la propiedad; al Centro de Recaudación de Ingresos Municipales (CRIM), por concepto de las contribuciones que se le adeudasen; y a John Doe y Richard Roe, como nombres ficticios para designar a cualquier persona natural o jurídica que pudiera tener interés en la propiedad a expropiarse.

---

[1] La finca objeto de la expropiación consta inscrita al Folio 41, vuelto del Tomo 149 de Santurce Sur, Finca número 3427, del Registro de la Propiedad, Sección Primera de San Juan.

El 21 de marzo de 2001, el Tribunal de Primera Instancia emitió la resolución de investidura de título traspasando así el título de dominio absoluto sobre la propiedad en controversia a la Autoridad. En esa misma fecha, el tribunal dictó una orden señalando la vista para discutir la valoración de la propiedad expropiada. La misma fue pautada para el 6 de junio de 2001. Llegada esa fecha, la parte con interés no compareció y se reprogramó para septiembre. En septiembre, se le informó al tribunal que las partes habían llegado a un acuerdo transaccional sobre el justo valor de la propiedad expropiada.

El titular registral de la propiedad, el señor Iñesta Nazario, había comparecido al tribunal para solicitar el retiro de los fondos consignados bajo protesta alegando que la suma consignada no representaba el justo valor en el mercado de la parcela expropiada. En su comparecencia, Iñesta Nazario incluyó una carta de la Corporación del Fondo de Seguro del Estado, que acreditaba la cancelación de la deuda a su favor que aparecía inscrita en el Registro de la Propiedad.

Las partes presentaron en el tribunal la estipulación el 9 de octubre de 2001 y en la misma se dispuso como justo valor la cantidad de $150,000.00. El 31 de octubre, el Tribunal de Primera Instancia acogió la estipulación presentada y emitió su sentencia a tales efectos. En ella, se ordenó a la Autoridad a consignar el exceso acordado como justo valor y que eliminara los nombres ficticios John

Doe y Richard Roe de la petición por carecer de interés en este procedimiento. El señor Iñesta, en diciembre de 2001, retiró la suma adicional y satisfizo para sí la totalidad del justo valor de la propiedad expropiada.

El 23 de octubre de 2003 --transcurridos más de dos años de haberse emitido la sentencia por el tribunal de instancia-- el Sr. Orlando C. Figueroa Burgos, su esposa Sra. María F. Cruz Gómez y la sociedad legal de gananciales compuesta por ambos ("esposos Figueroa-Cruz") solicitaron autorización para intervenir en el caso de epígrafe. Alegaron en la moción que acompañó la demanda de intervención, que el señor Iñesta Nazario había suscrito un pagaré hipotecario por la suma de $24,200.00 más intereses, garantizado con una hipoteca sobre la finca expropiada otorgada mediante escritura pública el 16 de enero de 1999, cuyo tenedor y poseedor era el señor Figueroa Burgos.[2] Se informó que dicho documento se presentó para inscripción en el Registro de la Propiedad el 16 de marzo de 2001, dos días después de presentada la petición de expropiación.

En la solicitud de intervención el señor Figueroa Burgos le informó al tribunal que ante el incumplimiento del señor Iñesta con su obligación, la declaró vencida e instó el correspondiente pleito en cobro de dinero y ejecución de hipoteca por la vía ordinaria.[3] En este pleito el tribunal dictó sentencia en rebeldía el 26 de septiembre

---

[2] El referido pagaré tenía fecha de vencimiento de 16 de enero de 2000.

[3] Caso Orlando C. Figueroa Burgos v. Roberto Iñesta Nazario, Civil Núm. KICD 2011-1205(902).

de 2002, condenando al Sr. Roberto Iñesta Nazario a satisfacer a Figueroa Burgos la cantidad de $24,200.00, más intereses y honorarios de abogado.

Advenida final y firme la sentencia en el caso de cobro de dinero, se expidió el correspondiente mandamiento para autorizar la venta del inmueble en pública subasta. La subasta se llevó a cabo el 30 de abril de 2003 y la buena pro le fue adjudicada a los esposos Figueroa-Cruz. Sin embargo, al tratar de hacer valer el título de dominio adquirido mediante la venta judicial, advinieron en conocimiento que el terreno hipotecado había sido previamente expropiado por la Autoridad.

Los esposos Figueroa-Cruz alegaron entonces que se les había privado de su propiedad sin el debido proceso de ley, así como que el proceso judicial de expropiación forzosa era nulo por falta de parte indispensable. Adujeron que la ACT tenía que verificar los gravámenes que pesaban sobre una propiedad justo antes de que se autorizara el retiro de los fondos consignados como justo valor. De haberse hecho eso, en este caso se hubiera evitado que el Sr. Roberto Iñesta Nazario retuviera la totalidad de la suma de dinero consignada en perjuicio del acreedor hipotecario. Asimismo, los esposos Figueroa-Cruz acusaron a su deudor, el señor Iñesta Nazario, de haber ocultado la existencia del gravamen hipotecario que se había presentado en el Registro de la Propiedad para la fecha en que éste solicitó el retiro de los fondos.

En la demanda de intervención, los esposos Figueroa-Cruz solicitaron que se citase al Sr. Roberto Iñesta Nazario para que mostrara causa por la cual había ocultado el gravamen hipotecario en el proceso de expropiación y por haber retenido para sí la suma total consignada por la ACT. En la alternativa, requirieron que la Autoridad satisficiera la deuda por alegadamente incumplir con el proceso de expropiación forzosa al no presentar una certificación registral de fecha reciente a la vista final. Amparó su contención en la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. secs. 2901 *et seq.* y la Regla 58.3 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 58.3.

El Tribunal de Primera Instancia ordenó a la parte interventora a acreditar que su derecho surgía del Registro de la Propiedad a la fecha de presentación de la petición de expropiación forzosa. En cumplimiento de orden, los interventores expusieron que a pesar que la escritura de hipoteca se presentó en el Registro en fecha posterior a la presentación de la demanda de expropiación, la fecha que se debe considerar es la del "último retiro de fondos". Nuevamente, justificaron su derecho a intervenir en el pleito de expropiación forzosa por el alegado incumplimiento de la ACT al no proveer una certificación registral reciente a la vista final del caso y antes que se autorizara el retiro de la cantidad adicional consignada como compensación justa.

Atendida la petición de intervención y demás escritos presentados, el foro primario declaró no ha lugar a la misma bajo el fundamento que los acreedores hipotecarios no estaban protegidos por el Registro de la Propiedad **al momento de la presentación de la petición de expropiación forzosa**; es decir, el 14 de marzo de 2001.

Inconformes, los esposos Figueroa-Cruz acudieron mediante recurso de *certiorari* al Tribunal de Apelaciones. El 28 de mayo de 2004, el tribunal *a quo* dictó sentencia en la que revocó al foro primario. Analizando únicamente la doctrina aplicable al derecho de intervención establecido en la Regla 21 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 21, el foro apelativo intermedio entendió que, aun cuando la intervención generalmente no se concede después de dictada la sentencia, en el presente caso era la manera más eficaz de proteger los intereses o derechos del interventor. Además, el foro apelativo intermedio concluyó que los esposos Figueroa-Cruz eran acreedores de un pagaré hipotecario a la fecha en que se celebró la vista para determinar la compensación a pagarse por la expropiación forzosa, por lo que la intervención "protegería los intereses que pudiesen ser afectados por el dictamen emitido por el tribunal en el pleito de expropiación forzosa."[4]

---

[4] Véase Sentencia del Tribunal de Apelaciones, Región Judicial de San Juan, Panel II, Caso Núm. KLCE 0303604, de 28 de mayo de 2004, apéndice del recurso de *certiorari*, págs. 218-228.

Inconforme con tal determinación, la Autoridad acudió ante nosotros y en el recurso de *certiorari* presentado señaló como único error lo siguiente:

> Erró el Honorable Tribunal de Circuito de Apelaciones al permitir a destiempo la intervención de un acreedor hipotecario en un procedimiento de expropiación forzosa ordenando así la litigación de un derecho de crédito personal en la sala especializada de expropiaciones luego de dictada la sentencia.

Expedimos el presente recurso en reconsideración. Contamos con los alegatos de las partes menos del señor Iñesta Nazario, quien no compareció ante nosotros. Estando en posición de resolver, procedemos a así hacerlo.

## II

El acreedor hipotecario alegó que, en virtud de la Regla 58.3(b) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 58.3(b), la Autoridad de Carreteras y Transportación como ente expropiante, estaba obligada a presentar en el tribunal de instancia, previo a la celebración de la vista para fijar la justa compensación, una certificación registral de fecha reciente a la vista. Ello, independientemente de la certificación que se incluyó en los legajos de expropiación al momento de presentarse la petición. El acreedor indicó que de haberse hecho eso en este caso, la Autoridad hubiera tenido que acumularle en este proceso y éste no se hubiera visto afectado.

La Autoridad de Carreteras por su parte arguyó que el Estado satisfizo su obligación bajo la Regla 58.3(b) cuando presentó, junto con la demanda, un certificación registral

que había sido expedida tres meses antes de presentarse la demanda. Finalmente indicó que exigir una segunda certificación resultaría muy oneroso para el Estado y tendría como resultado "postergar el derecho que le asiste a la parte con interés a recibir la justa compensación prontamente."

Veamos entonces.

**A**

Recientemente, en *Autoridad de Carreteras y Transportación v. Adquisición de 780 Metros Cuadrados de Terrenos*, res. 28 de junio de 2005, 164 D.P.R. ___, 2005 TSPR 92, 2005 JTS 97, nos expresamos sobre la naturaleza del procedimiento de expropiación forzosa y en particular, sobre el derecho de un acreedor hipotecario a litigar frente al Estado el monto de la justa compensación. Allí resolvimos que el titular de un derecho de garantía real sobre un inmueble expropiado no tenía derecho a litigar la justa compensación, pero **sí tenía derecho a ser citado y oído para que pudiera reclamar del fondo de compensación la parte correspondiente a su acreencia.** Hoy nos corresponde determinar, a la luz de lo dispuesto en la Regla 58.3(b) de las Reglas de Procedimiento Civil, cómo hacer efectivo ese derecho cuando el gravamen hipotecario sobre la finca no constaba en el Registro de la Propiedad al momento de iniciarse el procedimiento de expropiación, pero sí cuando se celebró la vista para dilucidar el justo valor, y por lo tanto al momento de dictarse sentencia final.

El procedimiento judicial de expropiación forzosa es uno de naturaleza civil y se lleva a cabo conforme dispone la Ley de Expropiación Forzosa de 12 de marzo de 1903, 32 L.P.R.A. secs. 2901 *et seq.*, y la Regla 58 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 58. *Autoridad de Carreteras y Transportación v. Adquisición de 780 Metros Cuadrados de Terrenos*, *supra*; *Administración de Terrenos v. Nerashford Development*, 136 D.P.R. 801 (1994); *Culebra Enterprises v. E.L.A.*, 127 D.P.R. 943 (1991); *E.L.A. v. Registrador*, 111 D.P.R. 117 (1981); *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961 (1953); *McCormick v. Marrero*, 64 D.P.R. 260 (1944). Véase también, J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publicaciones JTS, 2000, Tomo II, pág. 1074.

La Ley de Expropiación Forzosa dispone que junto a la petición de expropiación presentada en el tribunal, el peticionario o demandante **podrá incluir** una declaración para la adquisición y entrega material de la propiedad objeto de expropiación, firmada por la persona autorizada en ley para la expropiación correspondiente. En ésta, se debe hacer constar que la propiedad se pretende adquirir para uso del Estado Libre Asociado de Puerto Rico o para alguna agencia o entidad gubernamental; así como también el uso público específico para el que se destinará la misma. 32 L.P.R.A. sec. 2907. De ordinario, la petición de expropiación viene acompañada con un legajo de expropiación en el cual se incluye, entre otros documentos, la

declaración de adquisición y entrega material, **por lo que en la práctica, la declaración de adquisición no se presenta en etapa posterior a la presentación de la petición ante el tribunal**. Presentada la declaración y depositada en el tribunal la compensación, la Ley de Expropiación Forzosa, dispone que "el título absoluto de dominio de la propiedad, . . ., quedará investido en el Estado Libre Asociado de Puerto Rico, . . . o en la agencia o instrumentalidad . . . que hubiere requerido la expropiación." 32 L.P.R.A. sec. 2907. Ello, sin necesidad de ulterior procedimiento.

Este es un procedimiento de naturaleza *in rem* por lo que el mismo se insta contra la propiedad en vista de lo cual, no cabe hablar de partes indispensables al procedimiento. *Autoridad de Carreteras*, *supra*; *Administración de Terrenos v. Nerashford Development*, *supra*; *E.L.A. v. Registrador*, 111 D.P.R. 117, 120 (1981); *Pueblo v. McCormick*, 78 D.P.R. 939, 945 (1956); *Pueblo v. 632 Metros Cuadrados*, 74 D.P.R. 961, 970 (1953). Es por este motivo que no se puede desestimar un recurso de expropiación por ausencia de parte indispensable, ni mucho menos privar de jurisdicción al tribunal para transferir el título al Estado. *E.L.A. v. Registrador*, *supra*; C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*, West Pub., 1997, Vol. 12, sec. 3045, pág. 203 ("since the proceeding is *in rem*, there are no indispensable parties;

the failure to join a party does not defeat the condemnor's title.")

En lo que concierne a la acumulación de los demandados, la Ley de Expropiación Forzosa preceptúa que la demanda se insta en contra de los dueños de la propiedad, sus ocupantes y todas las demás personas con derecho o interés sobre la propiedad, **"hasta donde sea posible al demandante identificarlo."** 32 L.P.R.A. sec. 2905. (Énfasis nuestro.) Ello, para fines del derecho que éstos puedan tener sobre la justa compensación o daños compensables. *Íbid*.

La Regla 58.3 de las Reglas de Procedimiento Civil específicamente provee que al instituirse el pleito "el demandante solamente tendrá que **acumular como demandados** aquellas personas que tengan o reclamen un derecho en la propiedad **cuyos nombres a la sazón se conozcan."** (Énfasis nuestro.) Por otro lado, la Regla ordena también que, **antes de cualquier vista para determinar la compensación** que ha de pagarse por la propiedad, el demandante acumulará como demandados todas las personas que tengan o reclamen un derecho en dicha propiedad, **cuyos nombres puedan ser conocidos mediante diligencia razonable en el Registro de la Propiedad.**[5]

---

[5] La Regla 58.3 de las Reglas de Procedimiento Civil, en su inciso (b) establece cuál debe ser el contenido de la demanda de expropiación. Dicha disposición reglamentaria dispone en lo pertinente:

(b) Contenido. La demanda contendrá una relación breve y sencilla de la autoridad bajo la cual se expropia, el uso para el cual la propiedad habrá

Vemos entonces que la Regla 58.3(b) establece dos etapas en el proceso judicial de expropiación forzosa y le impone al Estado dos obligaciones distintas respecto la acumulación de las partes demandadas en cada una de las etapas. La primera etapa es la de presentación de la petición, en la cual sólo se le requiere al Estado que acumule como demandados a aquellas personas que a la sazón se conozcan y, hasta donde sea posible conocerlos, que tengan algún interés en la propiedad. La Regla no exige ningún grado de diligencia particular. En la segunda etapa, la Regla 58.3(b) le impone un *onus* mayor al Estado pues éste viene obligado a, previo a que se celebre cualquier vista para determinar la compensación, acumular en el pleito aquellas personas con interés sobre la propiedad cuyos nombres se adviertan luego de llevar a cabo **las diligencias razonables en el Registro de la Propiedad**.

---

de adquirirse, una descripción de la propiedad suficiente para identificarla, los derechos que han de adquirirse y en cuanto a cada propiedad una designación de los demandados que han sido acumulados como dueños de la misma o que tengan algún derecho en ella. **Al instituirse el pleito, el demandante solamente tendrá que acumular como demandados aquellas personas que tengan o reclamen un derecho en la propiedad cuyos nombres a la sazón se conozcan, pero antes de cualquier vista para determinar la compensación que ha de pagarse por cada propiedad, el demandante acumulará como demandados todas las personas que tengan o reclamen un derecho en dicha propiedad, cuyos nombres puedan ser conocidos mediante diligencia razonable en el registro de la propiedad**,...y también aquellos cuyos nombres hayan sido conocidos de otro modo. (Énfasis nuestro.)

En cada una de estas fases del procedimiento judicial se protegen o salvaguardan intereses distintos. Nos explicamos. Presentada la declaración de adquisición y consignado el importe del justo valor "el gobierno es investido del título sobre la propiedad." *Pueblo v. 632 Metros Cuadrados, supra,* págs. 970-71. Véase 32 L.P.R.A. sec. 2907. Es en este momento entonces, y no con la resolución del tribunal ordenando la investidura de título en el Estado, que el gobierno adviene titular del bien expropiado. *Pueblo v. Registrador,* 70 D.P.R. 260 (1949). El interés del Estado en un procedimiento de expropiación es exclusivamente advenir titular del inmueble para proceder a ejecutar la obra pública programada. Véase, C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure,* West Pub., 1997, Vol. 12, sec. 3045, pág. 204-205. El hecho que el Estado solo tenga que acumular a aquellas personas que "a la sazón se conozcan" sin mas, simplifica el proceso y evita dilaciones innecesarias en el desarrollo de la obra pública.

Por otro lado, los intereses de los dueños del inmueble expropiado y de las partes con interés sobre el mismo quedan protegidos mediante la exigencia de la Regla 58.3(b) de que previa cualquier vista sobre el justo valor, se efectúen las diligencias necesarias en el Registro de la Propiedad para identificar a todas las partes que tengan un interés sobre el bien expropiado. Así, el Estado se cerciora que quien no pudo ser identificado al inicio,

pueda comparecer al pleito para dilucidar el interés que tuviera sobre el fondo de justa compensación. Estas personas, después de todo, tienen derecho a ser citados y oídos antes de dictarse sentencia final. *Autoridad de Carreteras, supra; E.L.A. v. Registrador, supra*, pág. 120 n. 10; *Pueblo v. Registrador*, 64 D.P.R. 130, 135 (1944).

Adviértase que el título que adquiere el Estado es uno nuevo, derivado de su poder de soberano por lo cual todo derecho anterior que gravase el inmueble queda extinguido. *Autoridad de Carreteras, supra*. Y esos gravámenes entonces "se transfieren al fondo estimado para la justa compensación, el cual sustituye al inmueble en lo que respecta a las reclamaciones del dueño anterior y de los acreedores . . ., y dicha indemnización se extiende a la hipoteca." *E.L.A. v. Registrador, supra*, pág. 120; *Autoridad de Carreteras, supra*. Las partes con interés entonces recobran de ese fondo.

Cabe recordar que las partes con interés no tienen un derecho de crédito frente al Estado y éste no viene obligado a pagarle a cada una la porción que le corresponda del fondo de justa compensación. Así, en *Administración de Terrenos v. Nerashford, supra*, pág. 808, indicamos que "no surge para cada persona un derecho de crédito frente al gobierno, sólo nace una obligación del gobierno de depositar a favor de éstas una compensación justa por la finca." Ahora bien, y tal como allí indicamos, si el Estado incumple con su obligación de hacer un esfuerzo

razonable por incluir en el pleito a todas las partes con interés sobre el bien expropiado, surge entonces una obligación de éste hacia la parte no incluida, pero dicha "obligación es subsidiaria a la que tiene el resto de las partes compensadas hacia la parte olvidada." *Íbid*, a la pág. 811 n. 6.[6] Véase además, *Pueblo v. McCormick*, *supra*, a la pág. 947; J. Cuevas Segarra, o*p. cit.*, pág. 1079.

Finalmente, la expropiación forzosa constituye la transmisión de un derecho expropiado en forma imperativa por lo que da base a un acto registrable cuando recae sobre un inmueble o un derecho real. R. Roca Sastre, L. Roca Sastre Muncunill, *Derecho Hipotecario*, Ed. Bosch, Barcelona, 1997, 8va. ed., Tomo V, págs. 278-79. El título que se adquiere, como vimos, es uno declarativo de dominio y mediante este proceso, se extinguen todas las cargas y derechos que se hubieren constituido con anterioridad al inicio del procedimiento de expropiación. Íbid. Véase también, *Autoridad de Carreteras, supra*. Igualmente se "extinguirán las cargas constituidas durante la tramitación del expediente expropiatorio, o sea, en el periodo de tiempo comprendido entre su inicio y la ocupación de la cosa o bien por el expropiante." F. Pera Verdaguer, *Expropiación Forzosa*, Ed. Bosch, Barcelona, 1970, 2da ed., pág. 72. Ciertamente, así tiene que ser pues de lo

---

[6] El dejar de incluir alguna parte con interés no afecta la jurisdicción del tribunal en cuanto a la transferencia del título de dominio al estado; sin embargo, ello podría conllevar que los no citados pudieran relitigar la compensación. *Pueblo v. 632 Metros Cuadrados*, 74 D.P.R. 961, 971 n.6 (1953).

contrario, y de quedar gravado el bien expropiado y así inscribirse, se perjudicaría y se frustraría el propósito de la expropiación pues los dueños de esos gravámenes podrían dirigirse contra la propiedad para hacerlos efectivos, perjudicando la obra pública para la cual se expropió el bien.

Resumiendo, por ser el procedimiento de expropiación forzosa uno de naturaleza *in rem* no cabe hablar de partes indispensables en el mismo. Sin embargo, el Estado tiene la obligación de acumular en el pleito toda aquella parte con interés que pueda ser identificada, mediante diligencia razonable en el Registro de la Propiedad antes de celebrarse la vista sobre el justo valor, para que allí se diluciden los intereses de cada cual sobre el fondo de compensación. El incumplimiento con este deber no hace ineficaz el traspaso del título de dominio absoluto del expropiante, pero la parte no incluida podría tener derecho a ser compensada.[7] Investido el Estado con el título de dominio sobre el bien expropiado se extinguen las cargas y derechos que se hubieran constituido antes de iniciado el procedimiento, así como también las constituidas durante el procedimiento judicial.

---

[7] Véase *U.S. v. 194.08 Acres of Land*, 135 F.3d 1025 (5th Cir. 1998); *U.S. v. 125.2 Acres of Land*, 732 F.2d 239 (1st Cir. 1984); *Fulcher v. U.S.*, 632 F.2d 278 (4th Cir. 1980); *United States v. Certain Parcels of Land in Prince George's County*, 40 F.Supp. 436 (Md. 1941) ("It seems logically to follow that interests of unnamed and unknown parties are not concluded by the proceedings, and they must be entitled to just compensation in some way, even though the government has taken title and possession to the land and the fund has been distributed by the court.")

Trazado el marco doctrinal, apliquemos el mismo a los hechos del caso de epígrafe.

**III**

En el caso de epígrafe, la ACT anejó a su petición de expropiación una certificación registral de fecha de 23 de mayo de 2000, pero actualizada al 13 de diciembre del mismo año (tres meses antes de la presentación de la petición), y acumuló como parte demandada a todas aquellas personas que pudieran tener interés en la propiedad según surgía de la certificación registral. La Autoridad adujo que ello era suficiente notificación para cumplir con lo dispuesto en la Regla 58.3(b). Por el contrario, los interventores, esposos Figueroa-Cruz, aducen que era necesaria una segunda certificación registral que incluyera las constancias del Registro de la Propiedad para la finca en controversia en momentos recientes a la vista final sobre justa compensación.

La certificación registral es el método por excelencia para hacer constar el contenido del Registro de la Propiedad. La certificación es un documento público "que [hace] fe de sí mismo." Art. 27 de la Ley Hipotecaria de Puerto Rico, 30 L.P.R.A. sec. 2105. Este es un mecanismo para dar publicidad formal de las constancias del Registro. Constituye por lo tanto, prueba *prima facie* de los hechos allí consignados. *Pueblo v. Ocean Park*, 73 D.P.R. 360 (1952); L. Rivera Rivera, *Derecho Inmobiliario Registral Puertorriqueño*, Jurídica Editores, 2000, 2da ed., págs. 78-

81.[8]    Véase  además,  E.  Serrano  Alonso,  *Conceptos*
*fundamentales  del  Derecho  Hipotecario,*  Edisofer,  S.I.,
Madrid,  2002,  4ta  ed.;  P.  Ávila  Navarro,  *Curso  práctico*
*sobre  Registro  de  la  Propiedad,*  Ed.  Bosch,  Barcelona,  1999.

Cuando  la  parte  no  incluida  en  el  pleito  es  un
acreedor  hipotecario  cuya  hipoteca  está  propiamente
inscrita,[9]  no  puede  el  Estado  alegar  como  defensa  error  o
inadvertencia,  dado  que  de  un  somero  examen  de  los  libros
en  el  Registro  de  la  Propiedad  le  puede  relevar  su  interés.
En  este  caso,  sin  embargo,  la  hipoteca  no  estaba
constituida  cuando  se  presentó  la  petición  de  expropiación
y  la  investidura  del  título  en  el  Estado.

En  este  caso  la  Autoridad  se  tomó  la  iniciativa  de
incluir  desde  el  comienzo  del  proceso  de  expropiación  a
todas  las  partes  con  interés  en  el  inmueble  según  se
reflejaba  de  la  certificación  registral  procurada,  y  que
acompañó  con  la  petición  de  expropiación.    El  tribunal  de
instancia  por  su  parte,  a  los  pocos  días  de  presentada  la

---

[8] Aunque  nuestro  Registro  no  siempre  concuerda  con  la
realidad  extraregistral  --por  ser  de  inscripción
voluntaria--,  goza  de  una  presunción  *iuris  tantum*  de
corrección  y  exactitud  (principio  de  legitimación).    E.
Vázquez  Bote,  *Derecho  Privado  Puertorriqueño*,  Tomo  XV
(Derecho  Inmobiliario  Registral  II),  Equity,  1992,  págs.
35-36;  L.  Rivera  Rivera,  *Derecho  Inmobiliario  Registral*
*Puertorriqueño*,  Jurídica  Editores,  2000,  2da  ed.,  págs.  183
y  seq.
[9] A  pesar  de  la  naturaleza  voluntaria  de  la  inscripción  en
el  Registro,  la  hipoteca  es  un  derecho  real  de  inscripción
constitutiva.    Es  decir,  para  que  la  misma  quede
válidamente  constituida  es  necesaria  su  inscripción  en  el
Registro  de  la  Propiedad.    Artículo  1774  del  Código  Civil,
31  L.P.R.A.  sec.5042;  Artículo  188  de  la  Ley  Hipotecaria,
30  L.P.R.A.  sec.  2607;  L.  Rivera  Rivera,  *op.  cit.*,  pág.  483
y  casos  allí  citados.

petición, señaló la vista sobre justa compensación. Ésta no pudo celebrarse ante la incomparecencia del señor Iñesta y su abogado, por lo que el tribunal la reprogramó para septiembre. Del récord del tribunal de instancia se desprende que las partes comenzaron un proceso de negociación para transar el reclamo de justa compensación. Así, llegado septiembre, se le informó al tribunal que las partes habían convenido en el justo valor y el 9 de octubre de 2001 se presentó la estipulación acordada.

**A la luz de la cadena de eventos antes transcritos resolvemos que, en este caso, no era necesario que la Autoridad actualizara nuevamente, en octubre de 2001, la certificación registral sometida con la petición de expropiación.** Adviértase que la vista de justa compensación en este caso se señaló apenas unos días después de presentarse la petición, desencadenando así una serie de actuaciones que concluyeron con la estipulación acordada sobre la justa compensación. No es razonable en este caso exigir que el Estado actualice la certificación registral nuevamente cuando la Regla 58.3(b) dispone que la misma se presentará **"antes de cualquier** vista para determinar la compensación."** En este caso, justo antes de señalarse la vista inicial sobre la compensación, ya se había presentado una certificación registral de fecha reciente. Concluimos por lo tanto que no era necesaria la presentación de una nueva certificación o la actualización de la misma, como nos invita el recurrido. En su

consecuencia se revoca la determinación del Tribunal de Apelaciones.

Finalmente, debemos expresar que el recurrido, aun cuando ya no cuenta con una garantía real toda vez que la misma quedó extinguida con la expropiación, no así su acreencia. Éste tiene disponible los mecanismos legales correspondientes para reclamar de su deudor el monto total de la deuda y cualquier daño, si alguno, que hubiese sufrido.

Por los fundamentos expresados se revoca la sentencia dictada por el Tribunal de Apelaciones y se desestima la demanda de intervención instada.

Se dictara sentencia de conformidad.


                                    Anabelle Rodríguez Rodríguez
                                           Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Carreteras y
Transportación de Puerto Rico

     Peticionaria

        v.                    CC-2004-622

Roberto Iñesta Nazario

     Recurrido

SENTENCIA

San Juan, Puerto Rico, a 19 de octubre de 2005

Por los fundamentos antes expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la sentencia dictada por el Tribunal de Apelaciones y se desestima la demanda de intervención instada.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. El Juez Asociado señor Rebollo López disiente sin opinión escrita. La Jueza Asociada señora Fiol Matta no intervino.

                         Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo